**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Theo Donald McDANIEL,
Defendant-Appellant.**

**No. 75–3971.**

United States Court of Appeals,
Fifth Circuit.

April 6, 1977.

---

Robert B. Thompson, Gainesville, Ga., for defendant-appellant.

Robert E. Hauberg, U. S. Atty., James B. Tucker, Asst. U. S. Atty., Jackson, Miss., for plaintiff-appellee.

Before TUTTLE, GOLDBERG and RONEY, Circuit Judges.

RONEY, Circuit Judge:

Defendant McDaniel was convicted on a five-count indictment of possession of an unregistered sawed-off shotgun, 26 U.S.C.A. § 5861(d); possession of the same shotgun with its serial number obliterated, 26 U.S.C.A. § 5861(h); transportation of the same shotgun in interstate commerce, 26 U.S.C.A. § 5861(j); conspiracy to rob FDIC insured banks by force and violence, 18 U.S.C.A. § 371; and transportation of unregistered firearms in interstate commerce with intent to rob FDIC insured banks, 18 U.S.C.A. § 924(b). On appeal defendant challenges his conviction on three points of error: the denial of his motion to suppress evidence found in a warrantless vehicle search; the denial of his motion for acquittal on the insufficiency of the evidence to sustain his conviction for transportation in interstate commerce of three handguns with the intent to rob FDIC insured banks; and the imposition of cumulative sentences that exceed ten years and $10,000 for three violations of 26 U.S.C.A. § 5861.

After careful examination of the facts, which are crucial to the validity of the search and seizure, we affirm the district court's denial of defendant's motion to suppress. We hold that reasonable suspicion justified the initial investigatory stop of the vehicle in which defendant was riding, the ensuing detention was supported by probable cause to arrest based on a "switched" license tag, and the eventual warrantless search occurred only after the officer, while writing a citation for the switched tag, observed a partially covered pistol in plain view on the front seat of the vehicle. We also find that sufficient evidence supported the jury's verdict on the last indictment count, so that the district court correctly denied defendant's acquittal motion. We reverse and remand, however, because cumulative sentences should not have been imposed for the convictions under 26 U.S.C.A. § 5861(d), (h), (j) resulting from a single act.

## FACTS

On Thursday, October 4, 1973, three armed men robbed the Merchants and Farmers Bank in Shuqualak, Mississippi. In its efforts to locate the three robbers, the FBI had instructed law enforcement officers in surrounding towns to be on the lookout for any suspicious or abnormal activity, and warned that the robbers were armed and dangerous. The FBI also believed that the robbers were from Alabama.

Several days before, two of the co-defendants had been in the bank in nearby Brooksville, a small town of about 600 people. The two came into the bank together, and, while one cashed a twenty-dollar bill, the other circled the inside of the bank, stopping at each customer counter. After the date of the Shuqualak robbery, the Bank of Brooksville closed on Thursdays as a preventative measure.

Early on the morning of Thursday, November 8, 1973, Mississippi Highway Patrolman Shelton, who had been participating in the search for the robbers, was on duty in an area around Brooksville and stopped to talk to Town Marshal Hill. Hill showed him six photographs of the robbery suspects that the FBI had given him. Some, if not all, of the photographs were identified with the name of the suspect on the reverse side.

Later that morning, a city employee observed three men in a red pickup truck drive past the bank and city hall, turn left at the corner, turn around behind the city hall, and then depart in the same direction from which they had come. She reported this activity to Marshal Hill.

Meanwhile, Officer Shelton, who had been on patrol, was returning to Brooksville and observed a red pickup truck traveling in the opposite direction, which at first glance Shelton thought to be Marshal Hill's truck. Then, however, Shelton saw Hill following a few cars behind the pickup. Shelton turned around and met Hill at an intersection. Hill inquired of Shelton whether he had seen the red pickup with three suspicious looking characters in it. Upon receiving an affirmative answer, Hill asked Shelton to help him stop them so that he could check them out.

Shelton followed the pickup truck, which was traveling at a high rate of speed, and finally intercepted it about four miles away. The pickup bore an Alabama license plate. After the driver stopped in response to Officer Shelton's blue flashing light, he got out and walked over to the patrol car. Shelton asked to see his driver's license, which was in the name of Billie Ray Dawson. Shelton immediately recognized this name as that of one of the suspects whose photograph he had seen that morning. Shelton showed the license to Hill, who had pulled alongside and also recognized the name. Shelton then radioed to the highway patrol substation to get a tag check on the license plate, and learned that it was a "switched tag." As Shelton began to write out a citation, Dawson said that he could clear up the matter if he could make a telephone call. Shelton suggested that Dawson could use a public telephone at a filling station in Brooksville, to which suggestion Dawson readily acquiesced.

The three vehicles proceeded back toward Brooksville. Enroute Shelton radioed the sheriff for assistance at the filling station. Upon arriving at the station Dawson got out of the pickup, leaving his door open. Defendant McDaniel and co-defendant Jones remained in the truck. Shelton walked over to the driver's side to finish writing the citation for the switched tag. Through the open door Shelton saw the butt of a pistol protruding from under some clothing on the front seat. He took the pistol and announced that the three men were under arrest.

A search of the pickup truck revealed three handguns, a sawed-off shotgun with the serial number obliterated, an assortment of ammunition, a high-powered rifle, gloves, pillow cases, a jacket, and three ski masks and coveralls, of the type used in the Shuqualak bank robbery.

## SEARCH AND SEIZURE

Prior to trial, defendant McDaniel filed a motion to suppress the evidence obtained

from the truck on the ground that the search was incident to an illegal arrest made without probable cause. In determining the validity of the warrantless search and seizure, our inquiry is directed to the justification for the officer's actions at three points in time: the initial stop, the trip to the service station, and the arrest of defendants and search of the vehicle.

■ We begin by examining the justification for the initial stop, for if it was not justified, the subsequent acts are illegal fruits of the poisonous tree. *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *United States v. Robinson,* 535 F.2d 881 (5th Cir. 1976). The courts have recognized the right of a police officer to stop an individual if he reasonably suspects that the particular individual is involved in criminal activity. *United States v. Rias,* 524 F.2d 118 (5th Cir. 1975), citing, *United States v. McCann,* 465 F.2d 147 (5th Cir. 1972), cert. denied sub nom., *Kelly v. United States,* 412 U.S. 927, 93 S.Ct. 2747, 37 L.Ed.2d 154 (1973), and *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Probable cause is not required. *Terry v. Ohio, supra* at 22, 88 S.Ct. 1868. As the Supreme Court held in *Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972),

> [t]he Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, *Terry* recognizes that it may be the essence of good police work to adopt an intermediate response. A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable *in light of the facts known to the officer at the time.*

*Id.* at 145–146, 92 S.Ct. at 1923 (citations omitted) (emphasis added).

■ Therefore, to determine whether reasonable suspicion existed to warrant the investigative stop, we must examine all of the facts within the knowledge of the officers at the time of the stop. Shelton testified his sole reason for stopping the pickup was Marshal Hill's request for assistance. Shelton was entitled to rely on Hill if Hill had reasonable suspicion that criminal activity was afoot. *Whiteley v. Warden,* 401 U.S. 560, 568, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971); *see United States v. Tharpe,* 536 F.2d 1098 (5th Cir. 1976) (en banc). Shelton, who had received specific instructions to be on the lookout for activity possibly connected with the Shuqualak robbery, had talked to Hill that morning about the robbery and they had examined the FBI photographs of the suspects. Both knew the three robbers were thought to be from Alabama, and the red pickup, carrying three men, bore an Alabama plate. Hill not only knew the facts known to Shelton, but he also had heard from the city clerk about the suspicious activity of the red truck circling around the closed bank, a noticeable event in a town of 600. These facts, viewed as a whole, amounted to suspicion sufficient to warrant an investigative stop.

We note that at the suppression hearing Shelton testified that the sole reason he stopped the truck was because Hill asked him to do so. We have decided the case on this testimony. At trial, however, Shelton testified that he stopped the truck because of an outdated tag. If Shelton had so testified at the suppression hearing, there would be no question as to the reasonableness of the stop, since Mississippi and Alabama law both prohibit outdated tags. Ala. Code tit. 51 § 708 (Supp.1973); Miss.Code Ann. § 27–19–131,–133. *See United States v. Harris,* 528 F.2d 1327, 1330 (8th Cir. 1975). In fact Miss. Code Ann. § 27–19–133 authorizes a sheriff or deputy sheriff to arrest without warrant any person operating a motor vehicle contrary to the statute requiring current tags.

■ Having found the initial stop to be legal, we next turn our attention to the subsequent detention of defendant and the trip to the service station to allow Dawson to use the telephone. As soon as Dawson revealed his driver's license, both Shelton

and Hill recognized him to be one of the robbery suspects. Shelton, however, did not detain the three men on this basis alone, but ran an automobile license check, which within a matter of minutes revealed a "switched tag." At this point, Shelton clearly had probable cause to arrest Dawson. Instead of making the arrest then, however, in response to Dawson's request that he be allowed to make a phone call to clear up the matter, Shelton suggested they go to a nearby service station to use the telephone. Having probable cause to arrest, Shelton did not illegally detain the defendants by giving Dawson a chance to clear himself before making the arrest.

■ Plain view justifies the search of the truck at the service station. *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). Officer Shelton had a right to be where he was when he saw the pistol, a weapon commonly used by criminals, in plain view. He had approached the truck in order to finish writing the citation for the switched tag and saw the partially concealed gun through the open door of the truck. The plain view doctrine applies to articles which can be seen through the door or window of an automobile. *Nunez v. United States,* 370 F.2d 538 (5th Cir. 1967). The seizure of the gun, arrest of the defendants, and subsequent search of the pickup were then made with probable cause.

### SUFFICIENCY OF THE EVIDENCE

■ Defendant challenges the sufficiency of the evidence to sustain a conviction for transportation in interstate commerce of three handguns with the intent to rob FDIC insured banks. 18 U.S.C.A. § 924(b). Although he concedes that the evidence would sustain a finding that he participated in the interstate transportation of the guns, defendant contends that the evidence cannot support a finding that he intended to use the guns to rob federally insured banks. After a review of the evidence in a light most favorable to the Government, *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), we find the evidence

sufficient to sustain the jury's verdict of guilty. Defendant was a passenger in the truck in which were found various firearms, ammunition and distinctive clothing of the type used in the Shuqualak bank robbery. His companions had been seen in the Bank of Brooksville several weeks before. The three had been observed driving past the bank earlier that day. Three men had been involved in the Shuqualak robbery. From these facts, the jury could reasonably infer that defendant and his companions intended to rob the Bank of Brooksville. The district court's denial of the motion for acquittal is affirmed.

### CUMULATIVE SENTENCES

The trial court erred in imposing cumulative sentences of multiple convictions under the federal firearms statute. Defendant was convicted of possession of an unregistered firearm, in violation of § 5861(d), possession of the same firearm with obliterated serial number, in violation of § 5861(h), and transportation of the same unregistered firearm in interstate commerce, in violation of § 5861(j). The penalty provision applicable to § 5861 provides:

> Any person who violates or fails to comply with any provision of this chapter shall, upon conviction, be fined not more than $10,000, or be imprisoned not more than ten years, or both, and shall become eligible for parole as the Board of Parole shall determine.

26 U.S.C.A. § 5871.

Defendant was sentenced to serve consecutive ten-year sentences and to pay a fine of $10,000 for each of the three counts. Although each statutory subsection can support a separate conviction, the question is whether the total sentence can exceed the statutory maximum when all three counts relate to the same firearm and the same transaction.

Subsequent to oral argument of this case, this Court decided *Rollins v. United States,* 543 F.2d 574 (5th Cir. 1976). *Rollins* disallowed cumulative sentences exceeding ten years for two convictions under § 5861 on

the theory Congress did not intend to impose more than the statutory maximum for "a single act that happened to violate two separate provisions" of § 5861. 543 F.2d at 575.

Because *Rollins* involved a set of statutory subsections different from the ones McDaniel was convicted of violating, it does not automatically foreclose the Government's position here. In essence, that position is that possession of a weapon with an obliterated serial number, possession of the same weapon that is also unregistered, and transportation of that weapon are not a "single act." The Government relies on *United States v. Kiliyan,* 504 F.2d 1153 (8th Cir. 1974), *cert. denied,* 420 U.S. 949, 95 S.Ct. 1333, 43 L.Ed.2d 428 (1975), which upheld the imposition of two consecutive eight-year sentences for violations of § 5861. The Court held that the transfer of firearms without paying a transfer tax, § 5861(e), and the making of firearms without paying a making tax, § 5861(f), were separate offenses "which each threaten unique danger to society." 504 F.2d at 1155. Accordingly, each would support a different sentence.

*Kiliyan,* however, does not control this case because it involved two acts, making and transferring, either of which a defendant could do without doing the other. He could make, but not transfer; or, he could transfer but not make.

 Here, however, because it was unlawful to possess a weapon with an obliterated serial number, § 5861(h), it is impossible to register it. Therefore, possession of a firearm with an obliterated serial number necessarily entails possession of an unregistered firearm, § 5861(d), and the two fall within the "single act" rationale of *Rollins* for purposes of § 5871 sentencing. *Rollins* involved possession of a firearm not identified by a serial number, § 5861(i), which was also unregistered, § 5861(d). *See United States v. Clements,* 471 F.2d 1253 (9th Cir. 1972) (possession of a firearm upon which a making tax had not been paid, § 5861(c), which was unregistered,

§ 5861(d), and unlawfully making that firearm, § 5861(f)).

The argument that transportation is not part of a "single act" along with the two possession counts is slightly different. Certainly it is possible to possess without transporting. On the facts of this case, however, transporting the gun across the state line in a truck involved possession. Consequently, this situation is distinguishable from *Kiliyan,* which involved two separate acts, either of which a defendant could commit without doing the other, because here the defendant could not commit the transportation offense without committing the possession offense. Under *Rollins,* the three consecutive ten-year sentences were improper. *See also United States v. Ackerson,* 502 F.2d 300 (8th Cir. 1974), *vacated on other grounds,* 419 U.S. 1099, 95 S.Ct. 769, 42 L.Ed.2d 796 (1975), and *United States v. Tankersley,* 492 F.2d 962 (7th Cir. 1974).

The conviction is affirmed. The sentence is vacated and the cause is remanded to the district court for resentencing to a term and an amount not to exceed the maximum punishment that can be imposed for a single § 5861 count.