UNITED STATES of America,
Plaintiff-Appellee,

v.

Jose ARREDONDO–HERNANDEZ,
Defendant-Appellant.

No. 77–5298.

United States Court of Appeals,
Fifth Circuit.

June 14, 1978.

Roland E. Dahlin, II, Charles S. Szekely, Jr., Federal Public Defenders, Houston, Tex., for defendant-appellant.

J. A. Canales, U. S. Atty., James R. Gough, George A. Kelt, Jr., Asst. U. S. Attys., Houston, Tex., Robert A. Berg, Asst. U. S. Atty., Corpus Christi, Tex., for plaintiff-appellee.

Before MORGAN and GEE, Circuit Judges, and KING, District Judge.*

* United States District Judge for the Southern District of Florida, sitting by designation.

JAMES LAWRENCE KING, District Judge.

This appeal challenges the denial of a motion to suppress one hundred and thirty-five pounds of marijuana seized during the search of a vehicle stopped at a permanent immigration checkpoint. Defendant-appellant argues that the trial judge erred in finding probable cause for that search and consequently refusing to suppress the marijuana as evidence.

## I. FACTUAL BACKGROUND:

The facts in this case are not in dispute. At approximately 6:40 a. m. on September 11, 1976, the appellant was stopped for a routine citizenship inquiry at the permanent border patrol checkpoint, seven miles south of Falfurrias, Texas on U.S. Highway 281. Affixed to the bed of the pickup truck that he was driving was a wood camper body. Accompanying the driver in the cab of the truck were his wife and child.

After determining that the wife and child were citizens of the United States and that the defendant driver was a registered alien, border patrol agent Jose Esparza routinely circled the vehicle to ascertain whether there were other persons to be questioned.

Peering through a small window in the side of the camper, Esparza noticed that the entire front wall of the camper—from floor to ceiling—was one to one and one half feet closer to the window through which he was looking on the inside than it was on the outside. Esparza utilized a flashlight, necessitated by the pre-dawn darkness. This structural discrepancy, plainly visible from Esparza's vantage point, caused him to believe that a secret compartment, large enough to conceal an illegal alien, was built into this vehicle.

Esparza then motioned the appellant to the side of the road for a secondary investigation where he discovered a panel the size of the suspected secret compartment screwed into the roof of the camper. Using a screwdriver furnished by appellant, the agent unscrewed the panel and discovered one hundred and thirty-five pounds of marijuana within the compartment. This compartment was accessible only through the panel in the roof. Appellant was arrested and turned over to the Drug Enforcement Agency, along with the contraband. He was indicted for possession of the marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and, after denial of the motion to suppress, was tried and convicted on March 25, 1977.

The issue raised by this appeal is whether the discovery by a trained border patrolman of a structural discrepancy indicative of an unusually large secret compartment in a vehicle attempting to pass through a permanent immigration checkpoint is sufficient to provide probable cause for a search.

At the outset, we note that it is beyond peradventure that the border patrol checkpoint seven miles south of Falfurrias on U.S. Highway 281 constitutes a permanent checkpoint. *United States v. Woody*, 567 F.2d 1353 (5th Cir. 1978); *United States v. Blanford*, 566 F.2d 470 (5th Cir. 1978). The border patrol's immigration authority permits brief routine stops performed at such a permanent checkpoint for the purpose of ascertaining the citizenship of persons traveling north on the highway. *United States v. Martinez-Fuerte*, 428 U.S. 543, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976); *United States v. Bazan-Molina*, 544 F.2d 193 (5th Cir. 1976). Because there is a significant governmental interest in effectively preventing the illegal entry of aliens into this country at the Mexican border, such stops do not constitute an unconstitutional restraint of freedom. *United States v. Martinez-Fuerte, supra.* However, a stop should not be equated with a full-scale search. Consent or probable cause is required to convert a permanent checkpoint stop into a constitutional search. *United States v. Ortiz*, 422 U.S. 891, 95 S.Ct. 2585, 45 L.Ed.2d 623 (1975); *United States v. Dimas*, 537 F.2d 1301 (5th Cir. 1976).

In the case *sub judice*, the search uncovering the cache of marijuana was performed on the basis of probable cause.

## II. PROBABLE CAUSE UNDER THE PLAIN VIEW DOCTRINE:

It is uncontested that Patrolman Esparza lawfully stopped defendant's truck at the permanent checkpoint at Falfurrias. Once he had stopped the vehicle, Esparza had a clear responsibility to ascertain the citizenship of the occupants so as to curtail the unlawful entry of aliens into the United States from Mexico. By looking through the camper's small side window, in order to check whether other occupants within had not been questioned, Esparza discharged his responsibility in a careful and thorough manner. The structural discrepancy observed while performing his duty forms the core of the probable cause justifying the subsequent search which yielded the marijuana. The viewing of this discrepancy is justified under the Plain View Doctrine. *See, Coolidge v. New Hampshire*, 403 U.S. 433, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *United States v. Worthington*, 544 F.2d 1275 (5th Cir. 1977).

"Under the plain view doctrine, the officers must discover the evidence by inadvertence and while they have a legitimate reason for, being present." *Worthington*, 544 F.2d at 1280, n.4. Thus, in assessing the relevancy of the Plain View exception to the Fourth Amendment's requirements, we first must determine whether the patrolman made his observation from a place where he lawfully was entitled to be. In this regard, we note

> [t]hat the policeman may have to crane his neck, or bend over, or squat, does not render the doctrine inapplicable, so long as what he saw would have been visible to any *curious* passerby.

*James v. United States*, 135 U.S.App.D.C. 314, 315, 418 F.2d 1150, 1151, n.1 (1969) (emphasis added).

In the present case, if this truck had been parked in a public parking lot, a curious passerby clearly could have walked up to it and peered through the side window without suffering legal consequences. Patrolman Esparza occupies the same position as the curious passerby. The truck was stopped lawfully and Esparza lawfully was entitled to be in its vicinity as he made his cursory, *external* inspection.

The applicability of the Plain View Doctrine to this factual context is supported by several cases.[1]

In *United States v. McDaniel*, 550 F.2d 214 (5th Cir. 1977), an officer approached a truck in order to complete the citation he was writing because of a switched license tag. As he approached, he observed a gun through a partially opened door. The court upheld the "search" under the Plain View Doctrine, noting that "the plain view doctrine applies to articles which can be seen through the door or window of an automobile." *McDaniel*, 550 F.2d at 218. In *United States v. Nunn*, 525 F.2d 958 (5th Cir. 1976), several aliens were discovered lying in the open bed of a pickup truck. The truck was stopped lawfully by a police officer. In dictum, Judge Gee noted that once the car was properly stopped, the officer could seize the passengers who were in plain view. *Nunn*, 525 F.2d at 969, n.2.

---

1. It may be argued that the observation of the structural compartment was not even a search and therefore, there is no need even to invoke the Plain View Doctrine. *See, United States v. Wagner*, 497 F.2d 249 (9th Cir. 1974). In *Wagner*, a patrolman made an exterior or visual inspection of a car and noticed, by looking through the windshield, that the vehicle identification tag appeared to have been tampered with. The court upheld this visual observation, stating that the vehicle identification tag "was in full view and no warrant was necessary." *Id.*, at 252. In addition, in *United States v. Evans*, 507 F.2d 879 (9th Cir. 1974), a border patrolman waived an innocent looking automobile through a checkpoint area. While it was

rolling, a patrolman looked through the car window, into a space behind the front seat, and saw two persons who appeared to be Mexicans lying on the floor. The court upheld the seizure stating that "there was no unconstitutional stop and search. The officer saw only that which was observable in plain view to any person situated close to the road." *Id.* at 880.

While we have treated Esparza's observation under the Plain View Doctrine, the above Ninth Circuit authority could support a finding that Esparza's observation was permissible simply because it was not a search, as that term is used within the context of the Fourth Amendment. Under either approach, however, Esparza's observaion was permissible.

The structural discrepancy in the present case—like the gun in *McDaniel* and the aliens in *Nunn*—was observed by an officer who was lawfully in the place from which the observation was made and who did not know that the discrepancy existed prior to his peering within. This was not an instance where the officer opened the doors in the back of a truck to ascertain whether there were occupants within. Nor is it an instance of an officer looking through a window from a spot to which he traveled by trespassing on another's property. Patrolman Esparza did no more than look through a window available to any curious passerby and this, and this alone, was a permissible action on his part.

█ The fact that Esparza, in making his observation, did not have to infringe physically upon the structural integrity of this vehicle, supports our finding that he was lawfully present in the place at the time of the crucial observation. That he affirmatively peered through this small window with a flashlight instead of spotting the structural discrepancy by way of a glance, does not alter the inadvertent quality of this observation. In an insufficiently lit area, the use, by an officer, of a flashlight to aid his vision does not transform an otherwise justifiably plain view observation into an illegal search. *United States v. Worthington, supra; United States v. Lara*, 517 F.2d 209 (5th Cir. 1975).[2]

Ultimately, there were three factors upon which Esparza premised his decision to search the hidden compartment. First, he observed a structural discrepancy of dimensions sufficiently large to conceal an alien. Second, the event transpired at a permanent checkpoint where the illegal entry of aliens is a major source of concern. Third, there is the less tangible, yet equally influential, factor of the patrolman's experience. Patrolman Esparza had graduated from the Border Patrol Academy and had been a full-time Border Patrol Officer for several months. In that period, he had been stationed at the Falfurrias checkpoint for six weeks. A border patrol agent's knowledge of common methods of concealing aliens is an oft-cited factor in decisions finding probable cause for a search. For example, in *United States v. Nichols*, 560 F.2d 1227 (5th Cir. 1977), a pickup truck was stopped at a permanent checkpoint. A large box was located immediately behind the cab of the truck. This box appeared to the agent to be large enough to conceal aliens. Close inspection revealed an additional seam in the box, possibly reflecting a secret compartment. The court cited the agent's past experience as an important circumstance within the *totality of the circumstances* which must be considered in determining whether the agent has probable cause to search. *Nichols*, 560 F.2d at 1228. Indeed, as the Supreme Court stated in *Ortiz*, the case establishing the probable cause requirement for border patrol checkpoint searches:

> Officers are entitled to draw reasonable inferences from these facts [those on which the officers have relied in deciding which cars to search] *in light of their knowledge of the area and their prior experience with aliens and smugglers.*

422 U.S. at 897, 95 S.Ct. at 2589 (emphasis added).[3]

Esparza had a legitimate reason to be present at the side of the camper. There is no suggestion that his observation of the structural discrepancy was anything but inadvertent. Thus, the use of this discrepan-

---

**2.** Testimony in the record establishes that it was dark at the time the stop took place—about 6:40 a. m.—and the overhead lights necessarily would have thrown the inside of the camper into a deep shadow. Therefore, the use of the flashlight is proper and does not affect the resolution of this matter.

**3.** Probable cause was not found in *Ortiz* because "the officers advanced no special reasons for believing respondent's vehicle contained

aliens." 422 U.S. at 897, 95 S.Ct. at 2589. This is readily distinguishable from the case *sub judice.* Here, Patrolman Esparza, an officer who had been trained to detect compartments capable of concealing aliens or contraband, detected an unusual structural discrepancy at a permanent checkpoint near a border that has served as a point of illegal entry for many aliens in the past.

cy as the predicate for the subsequent search satisfied the requirements of probable cause.

## III. CONCLUSION:

By approving the actions of Patrolman Esparza herein, we do not suggest that any box viewed by a patrolman through a window may serve as a sufficient predicate for a subsequent search. It is significant in the present case that the "box" observed by Esparza was unusually large and capable of concealing an alien.

 We therefore conclude that (i) the lawful discovery of an unusually large hidden compartment in a vehicle (ii) stopped by an officer trained in the detection of devices utilized for the smuggling of aliens, (iii) at a permanent immigration checkpoint near the Mexican border, establishes probable cause for a full-scale search of that compartment.[4]

AFFIRMED.

---

4. We do not find it necessary to reach the issue of whether Falfurrias, which is clearly a permanent checkpoint, is also a functional equivalent of a border, as the district court so held in its opinion in this matter.