**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Anthony PRICE, Defendant–Appellant.**

No. 88–1438
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

March 24, 1989.

Gerald Goldstein, San Antonio, Tex., Kent A. Schaffer, Houston, Tex., Robert O. Switzer, San Antonio, Tex., for defendant-appellant.

LeRoy Morgan Jahn, Asst. U.S. Atty., Helen M. Eversberg, U.S. Atty., San Antonio, Tex., Thomas E. Booth, Atty., Appellate Sect., Crim. Div., Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before GEE, WILLIAMS, and HIGGINBOTHAM, Circuit Judges.

GEE, Circuit Judge:

The defendant was convicted, following a bench trial, of conspiracy to possess five kilograms of cocaine with intent to distribute and with possession of five kilograms of cocaine with intent to distribute. The defendant challenges his conviction on two grounds. First, he contends that the trial court erred in denying his motion to suppress evidence seized and oral statements made during a border checkpoint search of a vehicle operated by the defendant. Second, he contends that the evidence was insufficient to support his conviction on either the substantive charge or the conspiracy charge. We affirm the trial court's denial of the defendant's motion to suppress and affirm the defendant's convictions.

### The Facts

The defendant and a companion were stopped by United States Border Patrol Agent Jackson at a permanent immigration checkpoint located approximately 20 miles from the United States—Mexican border. The purpose of the stop was to inquire into the citizenship status of the vehicle's occu-

pants. Jackson testified that when he questioned the defendant about his citizenship status the defendant avoided eye contact, appeared nervous and seemed hesitant to answer questions.

Jackson leaned forward to get a good look at the occupants of the vehicle, a Chevrolet El Camino. At this time Jackson noticed that the spare tire, which in his experience was normally located behind the front seat in an El Camino, was not visible. Consequently, Jackson asked the defendant where the spare tire was located. The defendant replied that he thought it was underneath the vehicle but that he was not sure because he did not own the vehicle. Jackson checked under the vehicle but found no spare tire or mounting for a spare tire.

Jackson returned to the vehicle window and inquired of the defendant as to what was behind the occupant's seats. The defendant responded that there were clothes behind the seat. The defendant then unsnapped a carpet backing revealing a solid wall of foam padding spanning the width of the vehicle. It was Jackson's experience that the carpet backing in an El Camino should have covered a storage compartment large enough to hold a person. At this time Jackson asked the defendant to pull over to a secondary inspection station.

At the secondary inspection station Jackson was joined by Agent Rodgers. Rodgers, an experienced auto paint and body man, noticed burn marks where the paint had peeled revealing bare steel at the two corners of the truck bed portion of the vehicle. Rodgers began knocking on the floor of the pickup bed. This produced a hollow sound up to about 2 feet from the cab of the vehicle. Jackson and Rodgers looked under that portion of the vehicle and noticed what appeared to be a storage compartment of unfinished steel. Unlike the rest of the underside of the vehicle, the "compartment" contained no rust, dirt, road tar or mud. Rodgers then crawled under the vehicle and discovered a small hole in the compartment. With the aid of his flashlight he observed within the compartment what appeared to be yellow wrapping tape.

At this time the defendant and his companion were escorted to a detention trailer. Rodger entered the cab of the vehicle and removed the foam backing behind the carpet.[1] Behind the foam was a metal plate taped to the vertical wall of the cab. Behind this plate was a storage compartment containing seventy-six bundles wrapped in clear plastic and beige packing tape. A chemical test revealed that the packages contained cocaine.

At the time that the agents were inspecting the vehicle in the secondary inspection area the defendant disclaimed any knowledge of the vehicle. He stated that the vehicle was owned by his employer, Smith Auto Sales of Houston, Texas, and that he had borrowed the vehicle to pick up his companion in California. At this time his manner of speech appeared frantic. When advised that the agents believed that the vehicle contained a hidden compartment neither the defendant nor his companion appeared surprised.

### The Motion To Suppress

The defendant contends that the border patrol agents lacked probable cause to search his vehicle and that, therefore, the district court erred in denying his motion to suppress the physical evidence seized and oral statements made at the time of the search. This contention is without merit. In *United States v. Martinez–Fuerte*, 428 U.S. 543, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976) the Supreme Court held that a border patrol agent stationed at a permanent immigration checkpoint may stop a vehicle at the primary inspection site, question its occupants concerning their citizenship and conduct a visual inspection of the vehicle without any individualized suspicion that the car or its occupants are involved in a crime. *Martinez–Fuerte, supra* at 558–562, 96 S.Ct. at 3083–

---

1. The foam was attached with adhesive glue of the same type as that later found beneath the hood of the vehicle.

3085. Further, "[A]t permanent checkpoints, stopping and questioning and referral of motorists to a secondary inspection area is permissible under the Fourth Amendment, even in the absence of any individualized suspicion, much less probable cause." *United States v. Garcia,* 616 F.2d 210, 211 (5th Cir.1980) (citations omitted). It is, therefore, apparent that the defendant's Fourth Amendment rights were not violated by either the original stop or his referral to the secondary inspection site.

■ At the secondary inspection site the agents conducted a visual inspection of the vehicle, which included looking at the burn marks in the bed of the pickup and at the secret compartment under the vehicle. Because the items observed were in plain view, the visual inspection was not a search within the meaning of the Fourth Amendment. Once the agents had discovered the secret compartment they had probable cause to search the compartment itself. *Garcia, supra* at 212. The district court therefore properly denied the defendant's motion to suppress.

## Sufficiency of the Evidence

The standard of review in challenges to the sufficiency of the evidence is whether, taken in the light most favorable to the government, any rational finder of fact could have found the essential elements of the offense charged beyond a reasonable doubt. *United States v. Kaufman,* 858 F.2d 994, 999 (5th Cir.1988). The evidence need not exclude every hypothesis of innocence. *United States v. Arango,* 853 F.2d 818, 825 (11th Cir.1988). In this case the evidence was such that a rational finder of fact could have found the defendant guilty beyond a reasonable doubt.

### A. Possession with Intent to Distribute

■ The essential elements of the offense of possession of cocaine with intent to distribute are: 1) possession, 2) knowledge, and 3) intent to distribute. The defendant contends that the government failed to prove that he knowingly possessed the cocaine. In support of this contention the defendant points to the fact that the cocaine was not in his plain view, his fingerprints were not found on the cocaine, and he did not attempt to flee. The defendant fails, however, to mention his nervousness when being questioned or his repeated attempts, prior to the discovery of the cocaine, to convince the agents that he knew nothing about the vehicle. Given these facts, the government met its burden of proving that the defendant knowingly possessed the cocaine. *See United States v. Muniz–Ortega,* 858 F.2d 258 (5th Cir.1988). (Defendant's nervousness during questioning and hesitancy to answer questions was sufficient to show that he knowingly possessed marijuana found in his vehicle.)

### B. Conspiracy To Possess

■ The defendant also contends that the evidence was insufficient to support his conspiracy conviction because his codefendant was acquitted and the government failed to prove the existence of any unknown coconspirators. Even when named coconspirators are acquitted, "a person can be convicted of conspiring with persons whose names are unknown as long as the indictment asserts that such other persons exist and the evidence supports their existence [and complicity]." *United States v. Klein,* 560 F.2d 1236, 1242 (5th Cir.1977), *cert. denied,* 434 U.S. 1073, 98 S.Ct. 1259, 55 L.Ed.2d 777 (1978). In this case the government proved both the existence of unknown coconspirators and their complicity in the conspiracy.

At the time of the defendant's arrest he had in his possession a "beeper" and a portable telephone. The possession of these items indicated that the defendant was communicating with his coconspirators during the trip. The defendant also had in his possession a note indicating that the defendant was to "drop", i.e., deliver, some of the cocaine at the homes of various individuals named in the note. Additionally, the vehicle was purchased by an unknown buyer who used a ficticious name and address in purchasing the vehicle. Finally, the sheer volume of the cocaine involved indicates that the defendant could

not have loaded it alone. These facts are such that a rational finder of fact could have concluded that coconspirators existed and that they were involved in the conspiracy. The judgment of the district court is therefore

AFFIRMED.