STATE of Utah, Plaintiff and Appellant,

v.

Mark POOLE and John Wood, Defendants and Appellees.

No. 920524.

Supreme Court of Utah.

March 4, 1994.

Rehearing Denied April 18, 1994.

---

R. Paul Van Dam, Atty. Gen. and David B. Thompson, Asst. Atty. Gen., Salt Lake City, for plaintiff and appellant.

Wilford N. Hansen and Mitchell D. Maughan, Payson, for defendants and appellees.

HOWE, Justice:

This appeal is before us on certification from the court of appeals, pursuant to rule 43, Utah Rules of Appellate Procedure. The State appeals from the trial court's dismissal of a criminal information against defendants for lack of evidence. This necessitates review of the trial court's suppression order that led to the dismissal. The order is properly reviewable under *State v. Troyer*, 866 P.2d 528 (Utah 1993).

## FACTS

Utah Highway Patrol Officers Bushnell and Mangleson observed defendants Mark Poole and John Wood driving north in a truck on Interstate Highway 15. Bushnell testified that Wood, the driver, appeared to have a "drawn look" on his face and bloodshot eyes. The officers decided to follow the vehicle and, during the next three minutes, noticed that it was weaving within its lane on the highway. These factors led Bushnell to suspect that the driver was intoxicated and prompted him to pull over and stop the vehicle. Mangleson also observed that the bed of the truck seemed "odd." Bushnell testified that he asked Wood for his driver's license and vehicle registration. Wood produced a driver's license and a registration belonging to the vehicle's owner, Michael Anello. Wood also showed Bushnell written permission from the vehicle's owner allowing Poole to drive his truck. Bushnell asked Wood to step out of the vehicle to take field sobriety tests.

When Bushnell asked Wood if he had been drinking, he responded that he was just tired. Bushnell then inquired whether there were any drugs, alcohol, or weapons in the truck, to which Wood answered, "No." The officers did not administer any field sobriety tests at the scene following the initial stop, nor did they issue any citations.

In checking for alcohol, Bushnell requested and received Wood's voluntary consent to search the vehicle. Bushnell then proceeded to search the cab of the truck. He found tools behind the front seat but nothing that would confirm his initial suspicion of the presence of alcohol or of driving under the influence of alcohol.

Meanwhile, Mangleson spoke with Poole, the passenger. He asked Poole to step out of the vehicle and conducted a protective patdown during which he discovered a large wad of cash. Having found no evidence of alcohol in the cab of the truck, Bushnell asked and received Wood's permission to search defendants' duffel bags in the flatbed of the truck. That search revealed no incriminating evidence.

Mangleson testified that he started "exploring" the bed of the truck while Bushnell was searching the cab. He examined the top and bottom of the flatbed and measured lines that were six to eight inches apart. This discrepancy, indicating the possibility of a concealed compartment, prompted Mangleson to continue his investigation on the theory that the concealed compartment likely contained contraband. Mangleson asked Poole to lift up a piece of plywood resting on the truck bed. Using a screwdriver, Mangleson then pried open a section of metal sheeting and discovered a six- to eight-inch-high compartment beneath the flatbed. At this time, Poole withdrew his consent for a further search. However, Mangleson continued his search by removing the metal sheeting, which provided him with a clear view of contraband within the enclosed compartment. The officers ultimately retrieved almost 200 pounds of marijuana. Defendants were arrested and charged with unlawful possession of over 100 pounds of marijuana, a second degree felony, under Utah Code Ann. §§ 58–37–8(2)(a)(i) and (b)(i) (Supp.1993).

## PROCEDURAL HISTORY

Defendants moved to suppress the seized evidence. Following a hearing, the trial court issued a memorandum decision granting defendants' motion. The State agreed that defendants' proposed written findings of fact and conclusions of law fairly reflected the content of the memorandum decision but nonetheless submitted objections to them. The State requested the inclusion of one additional finding, namely, that Mangleson had "discovered numerous similar concealed compartments" over his many years as a trooper and that these compartments had "nearly always contained controlled substances or other items of contraband."

Refusing this request, the trial court issued its findings of fact and conclusions of law as per defendants' original proposal. The court concluded that the officers had an articulable suspicion to stop and detain defendants and that defendants had originally given, and then withdrawn, their consent to search the vehicle. The court further ruled that Mangleson's discovery of a concealed compartment in the truck did not constitute probable cause to continue the search absent defendants' consent. The court ordered the suppression of the contraband evidence on the ground that it was discovered in an illegal search and then dismissed the case with prejudice for lack of evidence.

## STANDARD OF REVIEW

We are asked to review the trial court's determination that the surrounding facts did not constitute probable cause to continue searching the vehicle after defendants withdrew consent. The State urges this court to apply the clearly erroneous standard of review to that ruling.

■■■ This court has yet to consider which standard appellate courts should apply when reviewing determinations of probable cause to continue a search in the absence of consent. In *State v. Pena*, 869 P.2d 932 (Utah 1994), we articulated, at length, the standard of review appropriate to reasonable-suspicion determinations. Although the legal standards and consequences of probable cause and reasonable suspicion are distinct, we believe that the standards for reviewing them should be the same. As explained in *Pena*, we review the underlying factual finding of the trial court for clear error. *Id.* at 539 n. 4. We review the legal conclusion of "probable cause" for correctness, and in so doing, we afford a "measure of discretion" which parallels that in *Pena* to the trial court's legal determination of whether the officers had probable cause to search the truck bed. *Id.* at 535.

## ANALYSIS

■■ The trial court concluded that the officers had articulable suspicion to detain defendants. It also concluded that voluntary consent was given and then withdrawn prior to the discovery of contraband. Based on our review of the facts and testimony, we find that the trial court was correct in these particulars. The trial court further held that the presence of a concealed compartment did not constitute probable cause to continue the search without a warrant or consent. We

will review that conclusion for correctness as set forth in *Pena*.

Through its conclusion as to the lack of probable cause, the trial court erroneously elevated the probable-cause standard to unrealistic heights. As Justice Stewart reasoned in *State v. Dorsey*, 731 P.2d 1085 (Utah 1986):

> [P]robable cause does not require more than a rationally based conclusion of probability: "In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of every day life on which reasonable and prudent men, not legal technicians, act. The standard of proof is accordingly correlative to what must be proved."

*Id.* at 1088 (quoting *Brinegar v. United States*, 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949)); *see Illinois v. Gates*, 462 U.S. 213, 243–44 n. 13, 103 S.Ct. 2317, 2334–35 n. 13, 76 L.Ed.2d 527 (1983).

■ In the course of a legitimate stop of the vehicle, Officer Mangleson discovered several facts which in their totality constitute probable cause. We need not and do not adopt a per se rule that a false bed and hidden compartment alone constitute probable cause to search, as the State urges and Justice Durham's dissent mistakenly charges us with doing. Rather, we apply a totality-of-the-circumstances analysis. First and foremost, the truck had a significant and unusual alteration in its bed which was in plain view and which *concealed* a secret compartment. Second, this truck was traveling a known drug trafficking route.[1] Third, the compartment was discovered by an officer with twenty-four years of experience in the field who had seen other false beds that

contained contraband.[2] Fourth, one of the vehicle's passengers held a large wad of money. Fifth, both defendants appeared extremely nervous during the stop. Sixth, the cab of the truck contained a wrench with a socket that matched the bolt securing the secret compartment. The false bed in connection with these other enumerated factors gave rise to probable cause for a search. Practically speaking, it was probable that criminal activity was occurring.

The Fifth Circuit Court of Appeals has upheld similar searches. In *United States v. Arredondo–Hernandez*, 574 F.2d 1312 (5th Cir.1978), the court specifically stated the issue as "whether the discovery by a trained border patrolman of a structural discrepancy indicative of an unusually large secret compartment in a vehicle attempting to pass through a permanent immigration checkpoint is sufficient to provide probable cause for a search." *Id.* at 1313. The court held that the structural discrepancy observed in the course of the officer's duty formed the core of the probable cause justifying the continued search and that "the use of this discrepancy as the predicate for the subsequent search satisfied the requirements of probable cause." *Id.* at 1315–16. The only articulable difference between that situation and the instant case is that *Arredondo* involved a permanent checkpoint for illegal aliens rather than an established drug route. That is not a significant distinguishing factor. As a matter of public policy, the threat of illegal drugs exceeds that of illegal immigrants. Also, in both *Arredondo* and the instant case, the initial stops were justified.

In *United States v. Garcia*, 616 F.2d 210 (5th Cir.1980), the Fifth Circuit again upheld a similar search under the *Arredondo* rationale: "[T]he patrolman's observation in plain

---

**1.** The fact that Interstate 15 is an established route for illegal drug trafficking is evidenced by numerous Utah appellate court decisions. *See, e.g., Sims v. State Tax Comm'n*, 841 P.2d 6, 7 (Utah 1992); *State v. Dudley*, 847 P.2d 424, 425 (Utah Ct.App.1993); *State v. Naisbitt*, 827 P.2d 969, 970–71 (Utah Ct.App.1992); *State v. Park*, 810 P.2d 456, 456–57 (Utah Ct.App.1991); *State v. Sims*, 808 P.2d 141, 142–43 (Utah Ct.App. 1991). See *United States v. Thompson*, 928 F.2d 1060, 1061 n. 2 (11th Cir.1991), where the district court took judicial notice that the Windward

Passage is the most common route taken by drug smugglers in the Western Hemisphere.

**2.** Although the State specifically requested this fact to be included in the trial court's findings, the judge refused, reasoning that he could not recall such evidence during the suppression hearing. This is clear error. Officer Mangleson did testify to it, and this was not challenged by defense counsel on cross-examination.

view of the specially attached secret compartment which was large enough to conceal illegal aliens (8′ × 4′ × 10″), combined with the permanent checkpoint location and the border patrolman's experience, gave rise, *without more*, to probable cause for the search of the compartment itself." *Id.* at 212 (emphasis added). The additional factors which were present and which are enumerated in a footnote in *Garcia* were not relied on to support probable cause in that case. *Id.* at n. 2.

Likewise, the Tenth Circuit Court of Appeals found probable cause where an officer discovered a false bed in a pickup truck which also concealed drugs. *United States v. Arango*, 912 F.2d 441 (10th Cir.1990). The court held that there was probable cause to arrest the driver after the officer found the false bed and an inadequate amount of luggage to support the defendant's story of being on a two-week vacation. *Id.* at 447.

■ It is possible that a false bed containing a concealed compartment on a truck could be used for legitimate purposes such as storing camping gear and hunting equipment or even hiding jewelry. This, however, does not defeat the existence of probable cause. We have previously addressed such reasoning:

> The court, in finding probable cause for the search, recognized that the individual details recited in the facts could also be consistent with innocent behavior since none of the acts observed were criminal. However, the court held that the circumstances, considered as a whole and in light of the experience of the narcotics agents, ... [formed] a valid basis for a reasonably prudent police officer's belief that criminal conduct was afoot.

*Dorsey*, 731 P.2d at 1089; *see Gates*, 462 U.S. at 243–44 n. 13, 103 S.Ct. at 2334–35 n. 13 (noting relevant inquiry in determining probable cause is "not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of noncriminal acts"). The standard for determining probable cause in the instant case is not whether the compartment could be used for legitimate purposes. "[T]he mere possibility of innocent explanations 'would not suf-

fice to diminish the reasonable likelihood of illegality appearing, from the circumstances, to prudent men possessing the knowledge and experience of the officers'...." *Tobias v. United States*, 375 A.2d 491, 494 (D.C.Ct. App.1977) (quoting *Peterkin v. United States*, 281 A.2d 567, 569 (D.C.Ct.App.1971), *cert. denied*, 406 U.S. 922, 92 S.Ct. 1788, 32 L.Ed.2d 122 (1972)). Although there might be innocent explanations for particular conduct, it is not necessary that all legitimate reasons be absent before an officer finds probable cause. *See id.; Wood v. United States*, 498 A.2d 1140, 1144 (D.C.Ct.App. 1985). "The quantum of evidence needed for probable cause is significantly less than that needed to prove guilt." *State v. Bartley*, 784 P.2d 1231, 1235 (Utah Ct.App.1989) (citing *State v. Ayala*, 762 P.2d 1107, 1112 (Utah Ct.App.1988)).

■ In reviewing the existence of probable cause, we should always take into account the experience of the particular law enforcement officers. They are entitled to draw reasonable inferences from the surrounding facts in light of their knowledge of the area and their prior experience with drug smugglers. *Arredondo*, 574 F.2d at 1315. "Police officers by virtue of their experience and training can sometimes recognize illegal activity where ordinary citizens would not. Some recognition should appropriately be given to that experience and training where there are objective facts to justify the ultimate conclusion." *Dorsey*, 731 P.2d at 1088; *see Bartley*, 784 P.2d at 1235. Mangleson has been an officer for many years and has seen similar concealed compartments used to transport contraband. This fact is probative. An officer's knowledge of common methods of smuggling contraband is an oft-cited factor in decisions finding probable cause for a search. *See Arredondo*, 574 F.2d at 1315.

In refusing to find probable cause, the trial court established a standard that is too rigid and runs afoul of practical everyday life. The United States Supreme Court has frequently remarked that probable cause is a flexible, common-sense standard. It does not matter if the officer's belief was "correct or more likely true than false." *Texas v.*

*Brown,* 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983).

"The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behavior; jurors as factfinders are permitted to do the same—and so are law enforcement officers. Finally, the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement."

*Id.* at 742, 103 S.Ct. at 1543 (quoting *United States v. Cortez,* 449 U.S. 411, 418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981)). The highway patrolmen here were confronted with an unusual adaption to a vehicle quite different from the standard characteristics of nearly every other truck on the road. Simply stated, people ordinarily do not carry legal items in the hidden compartment of a gas tank, the concealed portion of a hubcap, or, for that matter, in a secret compartment in the false bed of a pickup truck. *See State v. Bolton,* 111 N.M. 28, 801 P.2d 98, 114 (Ct.App.1990) (finding probable cause to search vehicle when experienced officer discovered false gas tank and defendants appeared nervous). In light of the discovery of the compartment and the other enumerated factors, it was probable that a crime was being committed. That is sufficient to find probable cause, and the proper standard requires nothing more.

A warrantless search was justified here. Clearly, had the officers released defendants and proceeded to obtain a search warrant, defendants could have easily driven off the interstate highway and disposed of the marijuana. A wrench to remove the bolt securing the secret compartment was in the truck and could have been used to swiftly open the compartment, allowing defendants to dispose of the incriminating evidence.

We uphold the search and reverse the trial court's suppression of the evidence and dismissal of the case.

HALL, J., concurs.

HALL, J., acted on this case prior to his retirement.

STEWART, Associate Chief Justice, concurring:

I concur in the majority opinion and write only to clarify a point in Justice Durham's dissenting opinion.

She cites *State v. Larocco,* 794 P.2d 460, 469 (Utah 1990), as if it were a majority opinion of this Court; it was not. Two justices concurred in the plurality opinion, and I concurred only in the result and not in any statement in the majority opinion. Nor, indeed, did my vote indicate acceptance of the constitutional theory asserted therein. In addition, and more to the point, I think it inappropriate for this Court to use Article I, section 14, the Utah unreasonable search and seizure provision, to attempt to "fine tune" federal constitutional search and seizure law. I may, as do other judges, disagree from time to time with the United States Supreme Court on a particular search and seizure opinion. But in my view, that alone does not justify resorting to Article I, section 14 to achieve a different result. It is easy enough to be a critic of any court's opinion, and certainly that is so in the area of search and seizure. When two powerful competing interests, such as law enforcement and the right of privacy, always conflict in any given decision, it is easy to assert that resolutions of cases are inconsistent. Perceived inconsistency is not a valid basis for this Court to launch an "independent" development of Article I, section 14 for the purpose of "correcting" federal constitutional law. One untoward consequence of such an approach is to impose two different and possibly conflicting constitutional standards on law enforcement officers with the unintended effect of diminishing, not increasing, protection for rights of privacy.

Having said the above, I am nevertheless of the opinion that Article I, section 14 of the Utah Constitution is indeed an important tool for protecting the rights of Utahns against unwarranted intrusions by government on their privacy interests. We live in an electronic era in which privacy rights are becoming ever more attenuated and increasingly subject to invasion in ways not imagined three or four decades ago. The people of

Utah, the Utah Constitution, and the social, family, commercial, and religious institutions in this state are not a homogenous part of the rest of the nation. To conclude that would be to deny the uniqueness of this state, its people, and the legal institutions that have grown out of its political, social, and moral foundations. When government power intrudes in a significant way into the privacy rights of Utahns that are not protected by the United States Constitution, this Court certainly should undertake a thoughtful consideration of the application of Article I, section 14.

---

ZIMMERMAN, Chief Justice, dissenting:

I dissent from the result reached by the majority. I do so solely on the ground that in my view, the trial court did not commit legal error when it concluded that under all the circumstances, the officers lacked probable cause to continue the search after the consent was withdrawn. While I might not have reached the same conclusion, I cannot conclude that the decision reached falls outside the permissible definition of "probable cause" as established in our case law. Therefore, we should affirm the trial court's decision to suppress the evidence. *See State v. Pena*, 869 P.2d 932 (1994).

I also note a point of disagreement with Justice Durham's separate dissent. I most emphatically do not read the majority opinion as establishing the per se rule which the State initially sought and then abandoned during oral argument: that the mere presence of any hidden compartment in any vehicle, without more, constitutes probable cause. Instead, I read the majority opinion as holding only that under the facts of this case, the

trial court erred in concluding that there was no probable cause for the search.

---

DURHAM, Justice, dissenting:

I respectfully dissent. The State asks this court to declare that a police officer's discovery of a concealed compartment in a pickup truck gives rise to probable cause to search as a matter of law. The State's position is that it is so common for concealed compartments to be used to hide contraband that the discovery of such a compartment, without any other indicia of criminal activity, gives an officer probable cause to search without a warrant. In the alternative, the State argues that a totality-of-circumstances analysis requires reversal, even without a per se rule, on the facts of this case. The majority has essentially acceded to both of these arguments.

To determine whether the discovery of a concealed compartment in a pickup truck gives rise to probable cause to continue a warrantless search, it is necessary to review our case law under article I, section 14 of the Utah Constitution, which protects against unreasonable searches and seizures. Article I, section 14 is implicated if we find that " 'a person has a reasonable expectation of privacy in the area searched.' " *State v. Brown*, 853 P.2d 851, 855 (Utah 1992) (quoting *United States v. Bilanzich*, 771 F.2d 292, 296 (7th Cir.1985)). This court in *State v. Larocco*, 794 P.2d 460 (Utah 1990),[1] applied this expectation-of-privacy concept to vehicles, saying that "a constitutional privacy interest exists in the interior of an automobile." *Id.* at 466. In the instant case, I conclude that defendants had reasonable expectations of privacy. Wood produced not only a driver's license and a valid registration, but also an authori-

---

1. In his concurring opinion, Justice Stewart criticizes my citation to *State v. Larocco* on the ground that the views expressed in that opinion do not represent the views of a majority of this court. While it is true that the lead opinion in *Larocco* was joined only by me and Justice Zimmerman, the views expressed in that opinion have since been adopted by a majority of the court. In *State v. Thompson*, 810 P.2d 415 (Utah 1991), a four-member majority of the court cited *Larocco* with approval and specifically endorsed

the exclusionary rule recognized in *Larocco*. *Id.* at 416, 418–19 (holding that article I, section 14 protects individuals from unreasonable searches and seizures of bank records and that illegally seized records must be suppressed). Moreover, the *Thompson* court stated that it was entirely appropriate "to give article I, section 14 a different interpretation from that given the fourth amendment." *Id.* at 416 (citing *State v. Watts*, 750 P.2d 1219, 1221 (Utah 1988)).

zation letter from the vehicle's owner. The protections of article I, section 14 of the Utah Constitution therefore apply to this case.

Once article I, section 14 is implicated, the next inquiry is whether a warrant is required. In applying article I, section 14 to vehicle searches, this court requires warrants whenever possible. *Id.* at 469–70. When a warrantless search is reviewed for validity, this court has historically "required both probable cause and exigent circumstances." *Id.* at 470. The State argues that probable cause was established as a matter of law by Mangleson's testimony before the trial court that during his extensive training and experience in drug interdiction, he has learned that hidden compartments in vehicles are frequently used to conceal contraband. Such testimony, with no empirical data to support it, is insufficient to support a rule of law. This court has no principled basis on which it may conclude that hidden compartments in vehicles are used exclusively or even frequently to conceal contraband. That is an assertion of statistical fact susceptible to verification. It seems equally likely to me that open-bed vehicle owners use hidden compartments to secure their jewelry, hunting equipment, cameras, tools, and other valuables since there is typically little or no other storage space for such items in these vehicles. A concealed compartment in the bed of a pickup truck would seem to perform the same function as a trunk in a passenger vehicle. In any event, the anecdotal testimo-

ny of one police officer does not amount to sufficient proof to the contrary.[2]

The State cites to, and the majority relies on, a number of federal cases holding that the observation of a concealed compartment in a vehicle was sufficient to establish probable cause to search further. These cases primarily deal either with border searches for illegal aliens where the courts relied on the totality of circumstances and the plain-view exception or with standard procedure boat searches by the U.S. Coast Guard where there was similar reliance on the totality of circumstances, the plain-view exception, and reduced expectations of privacy. The State erroneously asserts that the Fifth Circuit Court of Appeals has consistently held that an officer's lawful discovery of a concealed compartment large enough to hold and conceal illegal aliens, standing alone, suffices to establish probable cause to search the compartment. My review of these cases reveals that in all instances, the discovery of the compartment was only one of several factors required to establish probable cause to search the concealed compartment itself. In *United States v. Price*, 869 F.2d 801 (5th Cir.1989), for example, the case did not turn solely on the discovery of a hidden compartment, but rather on several factors: the border patrol agent's previous experience with El Camino hidden compartments, the driver's hesitancy to answer citizenship questions, the admitted lack of vehicle ownership, and observations made in plain view during a legal visual inspection,[3] including such things

2. The majority takes comfort in the following additional circumstances: (1) The truck had a "significant and unusual" alteration in its bed which concealed a secret compartment; (2) it was traveling a known drug trafficking route; (3) the officer had seen other "false beds" that have contained contraband; (4) a passenger possessed a large amount of cash; (5) defendants seemed nervous; and (6) a wrench in the truck's cab fit the bolt to the hidden compartment. My response to those circumstances is that they are entirely neutral in their impact on probable cause. (1) If the truck's alteration was so obvious, it did not in fact conceal the presence of the compartment. (2) The highway in question is the only major route available to anyone traveling between Utah and southern California. It may be heavily used by drug traffickers, but it is also used by all innocent drivers moving between those destinations. (3) Officer Mangleson's testimony that other similar false beds contained

contraband in his experience was simply not probative. I assume officers consistently find contraband in back seats, automobile trunks, and back-packs on the floor. That fact, by itself, cannot give rise to probable cause to search a particular car, trunk, or pack. (4) Most travelers carry cash. (5) Most people are nervous when stopped by highway patrol officers. (6) The officers claimed to be able to discern the existence of the hidden compartment from the construction of the truck bed; it should be no cause for surprise that a tool existed for accessing it. This is just another justification for warrantless searches of *any* "hidden compartment," a result which I believe the majority opinion will permit.

3. In *United States v. Price*, 869 F.2d 801, 804 (5th Cir.1989), the court rejected the defendant's contention that the border patrol agents lacked probable cause to search his vehicle. The court stated that "the Supreme Court held that a border

as a spare tire removed from its normal location, a foam pad wall behind the front seat, burn marks on the corners of the truck bed revealing bare steel, a secret compartment, and a hole in the compartment that revealed what appeared to be wrapping tape. *Id.* at 803.

In *United States v. Garcia,* 616 F.2d 210 (5th Cir.1980), a border patrolman conducted a visual inspection of a truck at a checkpoint and in plain view discovered, in addition to a concealed compartment large enough to hold a human being, a floor mat between the cab and the bed of the truck, four new bolts in the truck bed, brick shapes seen through cracks in the compartment, and a plastic trash bag hanging from the bottom of the truck. When he touched the bag, he saw seeds and smelled marijuana. *Id.* at 211–12. Again, the compartment alone did not establish probable cause to search further. And importantly, while the officer conducted a lawful visual border search, his discovery and subsequent search of the secret compartment were justified under the plain-view doctrine. *Id.* at 212 (citing *United States v. Arredondo–Hernandez,* 574 F.2d 1312 (5th Cir.1978)). In the instant case, arguably even the compartment itself was not in plain view because Mangleson had to take measurements and remove items from the truck bed to confirm his suspicion, and it is not established that the existence of the hidden compartment would have been visible to any curious passerby. *See id.*

In *United States v. Arredondo–Hernandez,* 574 F.2d 1312 (5th Cir.1978), a border patrolman premised his decision to search an inadvertently discovered hidden compartment[4] on three factors: a structural discrepancy in plain view large enough to conceal a person, a major concern about illegal entries through a permanent checkpoint stop, and

his professional experience. *Id.* at 1315. Even *Arredondo–Hernandez* required more than the discovery of a concealed compartment and the officer's experience to satisfy the totality-of-circumstances test. Probable cause was found because the patrolman's training in detecting structural discrepancies was supported by the fact that the detection event took place near a border "that has served as a point of illegal entry for many aliens in the past." *Id.* at 1315 n. 3.

In *United States v. Arango,* 912 F.2d 441 (10th Cir.1990), *cert. denied,* 499 U.S. 924, 111 S.Ct. 1318, 113 L.Ed.2d 251 (1991), after stopping a truck driver for speeding and then questioning the driver about the identity of the registered owner, the officer suspected that the vehicle was stolen. With the driver's consent, the officer then searched the truck and discovered that the truck bed had been modified. *Id.* at 443. Even if the defendant had not consented to the search, the officer's search was valid because the defendant could not show that he had gained lawful possession of the truck from the registered owners and thus lacked standing to assert a reasonable expectation of privacy. *Id.* at 445. This is not the case here, where defendants had lawful possession of their truck and hence a reasonable expectation of privacy. In contrast to *Arango,* Bushnell and Mangleson continued their search of the hidden compartment after defendants withdrew their consent.

Finally, in *United States v. Thompson,* 928 F.2d 1060, 1066 (11th Cir.), *cert. denied,* ___ U.S. ___, 112 S.Ct. 270, 116 L.Ed.2d 222 (1991), and *United States v. Lopez,* 761 F.2d 632, 636–37 (11th Cir.1985), the permissibility of searches into hidden compartments was based on findings that there was no expectation of privacy to prevent searches conducted pursuant to legitimate safety inspections. In

patrol agent stationed at a permanent immigration checkpoint may stop a vehicle at the primary inspection site, question its occupants concerning their citizenship and conduct a visual inspection of the vehicle without any individualized suspicion that the car or its occupants are involved in a crime." *Id.* at 803 (citing *United States v. Martinez–Fuerte,* 428 U.S. 543, 558–62, 96 S.Ct. 3074, 3083–85, 49 L.Ed.2d 1116 (1976)). Unlike a vehicle stop requiring articulable suspicion to detain, a border agent is permitted to

visually inspect the vehicle beyond the initial purpose of the detention and without consent.

4. The court stated, "There is no suggestion that his observation of the structural discrepancy was anything but inadvertent." *United States v. Arredondo–Hernandez,* 574 F.2d 1312, 1315 (5th Cir. 1978). Mangleson's discovery of the hidden compartment in this case cannot be characterized as inadvertent.

the instant case, defendants were justified in their expectation of privacy.

I would therefore reject the State's request to formulate a per se rule of probable cause to search any concealed compartment in a pickup truck, which I think the majority opinion accomplishes de facto. I likewise reject the majority's assertion that the facts in this case establish probable cause after an evaluation of all available information in light of the existing circumstances. *See State v. Dorsey,* 731 P.2d 1085, 1088 (Utah 1986); *see also Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). The search occasioned by the initial suspicion of a DUI offense uncovered no supporting evidence that would lead a " 'prudent, reasonable, cautious police officer ... guided by his experience and training' " to believe that he should continue a search. *Dorsey,* 731 P.2d at 1088 (quoting *United States v. Davis,* 458 F.2d 819, 821 (D.C.Cir.1972)). As defendants point out, the officers determined that the driver was tired and that the steering in the vehicle was loose, both plausible explanations for the "weaving" of the vehicle that occasioned the stop. On further investigation, neither weapons, odors, nor any visible evidence of any contraband was discovered. Under these circumstances, I conclude that the discovery of a concealed compartment, without more, would have led a prudent, reasonable, and cautious police officer to release defendants.

Probable cause for this search did not exist. I would affirm.