## HAFFNER *v.* DOBRINSKI.

### APPEAL FROM THE SUPREME COURT OF THE TERRITORY OF OKLAHOMA.

No. 35. Submitted November 12, 1909.—Decided January 10, 1910.

In order that specific performance may be decreed on the ground of part performance the acts done and relied on by the party seeking relief must be such that damages would not be adequate relief.

Specific performance rests in judicial discretion to be exercised according to settled principles of equity and with reference to the facts in the particular case, and it may be refused where, as in this case, the conditions do not appeal to equitable consideration, even in case of part performance.

The Supreme Court of Oklahoma did not err in refusing to decree specific performance in a case where complainant had funds in his possession sufficient to cover his damages, if any, and where that court held that the alleged contract was unreasonable in its provisions, lacked mutuality, and the part performance did not take the contract out of the statute of frauds.

17 Oklahoma, 438, affirmed.

THE Supreme Court of Oklahoma, from whose judgment affirming the decree of the District Court of Kingfisher County this appeal was prosecuted, stated the case as follows (17 Oklahoma, 438):

"This action was brought on the thirteenth day of May,

1902, by the plaintiff in error, John F. Haffner, against the defendants in error, for the specific enforcement of an oral contract for the sale of real estate. Thereafter, on January 14, 1903, upon the application of the plaintiff in error therefor, a restraining order was issued against the defendant in error Dobrinski, restraining him from prosecuting certain actions of forcible entry and detainer which he had brought against Haffner in the Probate Court of Kingfisher County after the filing of the petition in this case, and which involved the land in controversy herein. This order was made conditional upon Haffner giving bond in the sum of $500.00, which amount was later increased to $1,000.00. On March 9, 1903, the court overruled a motion to dissolve this restraining order, and, upon the hearing of a demurrer filed by Dobrinski to Haffner's petition, granted leave to the plaintiff in error to amend. On March 18, 1903, by leave of court, Haffner filed an amended petition, upon which the case was heard, which, in substance, is as follows:

" 'That on and prior to September 4, 1901, Dobrinski was the owner in fee of the east half and lots 3 and 4 of sec. 31, twp. 17, range 9, west of the Indian Meridian, in Kingfisher County, Oklahoma, and also 1,668 bushels of wheat and 30 bushels of oats. That on said date Haffner and Dobrinski entered into a verbal contract for the sale and purchase of said land and personal property, for a total consideration of $3,820.00, of which $920.00 was for the oats and wheat. A payment of $1,020.00 was to be made on or before January 1, 1902, $600.00 of which was to be applied by Dobrinski on a mortgage then on the premises, and a warranty deed executed by Dobrinski to the plaintiff in error, Haffner. At the same time Haffner, upon the execution of said deed, was to execute to Dobrinski his note for $2,800.00, bearing 5 per cent interest per annum, payable in ten years, Haffner to bind himself to apply upon the said indebtedness all of the proceeds arising from the crops raised upon said land, over and above cost of raising the same. That in pursuance of said oral

contract Haffner paid Dobrinski $50.20, and on the day following, September 5, 1901, took peaceable possession of the premises and personal property, made minor improvements about the farm, planted about $60.00 worth of trees and sowed one hundred acres of the land to wheat and ten acres to oats.' "

"The petition then alleges that Dobrinski on November 30, 1901, conveyed the premises by warranty deed to one John A. Webber, for the consideration of $1,700.00, and that Webber later on, for a consideration unknown to the plaintiff Haffner, at the instance of Dobrinski, deeded the land to the defendant in error Shultz. Shultz, however, is alleged to have quit-claimed back to Dobrinski, and to have held in the interim in trust for Dobrinski. The petition then recites that prior to the first of January, 1902, at which time the payment of $1,020.00 was to be made, Haffner notified Dobrinski that he was ready and willing to make payment, and that he was at that time and ever since has been ready, willing and able to pay said sum, less the payment of $50.20 theretofore made, but that Dobrinski refused and still refuses to accept the same. That Haffner has at all times been able, ready and willing to comply with his contract, and offers to bring into court the said $1,020.00, less $50.20 paid, and to execute to Dobrinski his note for $2,800.00 secured by first mortgage on the real estate, and in addition thereto, to bring into court the sum of $458.76, which it is alleged is the proceeds of the farm, over and above outlay for help, while Haffner has held the same. Continuous possession of the premises on the part of Haffner since September 5, 1901, is then alleged, and the petition concludes in this language: 'That no just, fair or adequate assessment of damages could be made, and that the defendant Michael Dobrinski is not financially responsible for any adequate amount of damages, and that the plaintiff has no plain and adequate remedy at law,' followed by a prayer for an order directing Dobrinski to execute a warranty deed in accordance with the terms of the contract.

"To this amended petition, Shultz filed what is in effect a disclaimer. After various delays, occasioned by motions to strike out portions of the first answer, Dobrinski filed an amended answer in two paragraphs, and later withdrew the second paragraph, and stood upon the first alone. This paragraph of Dobrinski's amended answer admits his ownership of the premises and personal property on September 5, 1901, and admits that Shultz held the land in trust for him, and then contains a verified general denial as to all the other allegations in the amended petition. At the trial Dobrinski objected to the introduction of any evidence, 'for the reason,' as the record recites, 'that the petition did not state facts sufficient to constitute a cause of action against the defendant and in favor of the plaintiff.' This objection was by the court sustained, exception saved, motion for a new trial filed and overruled, and the case brought here for review.

"Error is predicated upon the sustaining of the objection to the introduction of evidence, and also upon the refusal of the court below to make perpetual the restraining order above referred to, and because of the fact that plaintiff in error was required to give bond when the order was obtained. In their brief, counsel for plaintiff in error enter into an extended argument to sustain their contentions, first, that oral contracts in general, relative to the sale of real estate, are not absolutely inhibited by our statute of frauds, and, second, that if the statute applies, the contract declared upon and sought to be enforced in this action is not within its scope, by reason of part performance thereof."

*Mr. Watson E. Coleman, Mr. L. O. H. Alward* and *Mr. D. W. Buckner* for appellant.

*Mr. C. C. Flansburg* for appellees.

MR. CHIEF JUSTICE FULLER, after making the foregoing statement, delivered the opinion of the court.

The Supreme Court of Oklahoma held that there was no

error in excluding all the evidence because the petition did not state a cause of action in equity; that the doctrine is well settled that specific performance is never demandable as a matter of absolute right, but as one which rests entirely in judicial discretion, to be exercised, it is true, according to the settled principles of equity, but not arbitrarily and capriciously, and always with reference to the facts of the particular case.

The principles applied were announced in *Pope Manufacturing Company* v. *Gormully*, 144 U. S. 224, 236. As remarked by Mr. Justice Brown in that case: "To stay the arm of a court of equity from enforcing a contract it is by no means necessary to prove that it is invalid; from time to time immemorial it has been the recognized duty of such courts to exercise a discretion; to refuse their aid in the enforcement of unconscionable, oppressive or iniquitous contracts; and to turn the party claiming the benefit of such contract over to a court of law. This distinction was recognized by this court in *Cathcart* v. *Robinson*, 5 Pet. 264, 276, wherein Chief Justice Marshall says: 'The difference between that degree of unfairness which will induce a court of equity to interfere actively by setting aside a contract, and that which will induce a court to withhold its aid, is well settled. 10 Ves. 292; 2 Coxe's Cases in Chancery, 77. It is said that the plaintiff must come into court with clean hands, and that a defendant may resist a bill for specific performance, by showing that under the circumstances the plaintiff is not entitled to the relief he asks. Omission or mistake in the agreement, or that it is unconscientious or unreasonable, or that there has been concealment, misrepresentation or any unfairness, are enumerated among the causes which will induce the court to refuse its aid.'" And see *Hennessy* v. *Woolworth*, 128 U. S. 438, 442; *Nickerson* v. *Nickerson*, 127 U. S. 668.

And the Supreme Court of Oklahoma further said (p. 443) that where it is disclosed by complainant himself that the contract upon which he bases his suit "is unreasonable in its

provisions, if not unconscionable, and void under the statute of frauds, and that the acts done and relied upon to warrant a decree on the ground of part performance are not of such a nature that damages would not be an adequate relief, but, on the contrary, that he has within his immediate control money and property more than sufficient to compensate him for any loss sustained, a case for equitable intervention is not shown, and upon such state of facts, a court of equity is justified in refusing specific performance."

In short, the court held that the trial court was fully warranted in refusing to require the alleged contract to be specifically performed as being so unreasonable in its provisions as to justify such refusal, and also for want of mutuality and not practically enforceable as to both parties, and as to the part performance relied on to take the contract out of the statute of frauds, that the contention was without merit. The doctrine is that in order that specific performance may be decreed on the ground of part performance, the acts done by the one seeking relief and relied on to warrant a decree, must be of such a nature that damages would not be an adequate relief. *Williams* v. *Morris*, 95 U. S. 444. But here, as the lower court pointed out, the plaintiff showed on the face of his petition that he had in his possession money belonging to the defendant adequate to cover any possible damages many times over. He had paid the merely nominal sum of $50.20 on the purchase price, entered into the possession of the property, done the repairing common to all farmers, expended $60 in improvements, and prepared 110 acres for crop. But he had in his own control the $920 derived from the sale of the wheat and oats, and in addition thereto the sum of $458.76, the first year's returns from the farm above the cost of obtaining it. In other words, he had lived on the farm free for over a year; had almost $1,400 of the other's money in his hands, and now complained in equity that fraud would be perpetrated upon him if the court does not enforce a contract which will allow him to remain nine years longer

in possession of the land, free from any obligations with which defendant can force him to comply until the expiration of that time. Such a condition of affairs did not appeal to equitable consideration. The action of the trial court was sustained as entirely justified. We concur in that conclusion, and nothing else calls for comment.

*Judgment affirmed.*