UNITED STATES of America,
Plaintiff–Appellant,

v.

ASHLEY TRANSFER & STORAGE CO.,
INC.; Dale J. Cook Moving and Storage, Inc.; Thomas W. Bivens, Sr.; John
D. Cook, Defendants–Appellees.

No. 87–5153.

United States Court of Appeals,
Fourth Circuit.

Argued June 10, 1988.

Decided Oct. 3, 1988.
Rehearing and Rehearing In Banc Denied
Nov. 16, 1988.

222

Robert J. Wiggers (Charles F. Rule, Asst. Atty. Gen., Kenneth G. Starling, Deputy Asst. Atty. Gen., John J. Powers, III, Constance K. Robinson, Nancy H. McMillen, Michael D. Billiel, Washington, D.C., Philip J. Thompson, Dept. of Justice, Vinton D. Lide, U.S. Atty., Columbia, S.C., on brief), for plaintiff-appellant.

Lionel Stukes Lofton (Michael P. O'Connell, Charleston, S.C., Parks N. Small, Columbia, S.C., on brief), for defendants-appellees.

Before HALL and CHAPMAN, Circuit Judges, and BUTZNER, Senior Circuit Judge.

BUTZNER, Senior Circuit Judge:

The government appeals from the district court's refusal to submit to the jury the second count of an indictment charging the defendants in count I with conspiring to fix prices in violation of the Sherman Act and in count II with conspiring to defraud the government in violation of 18 U.S.C. § 371. The government asserts that the district court lacked discretion to refuse to submit count II and it seeks a new trial on this count. The defendants oppose the appeal, arguing that it violates the double jeopardy clause of the Constitution, as well as principles of collateral estoppel. Because count II should have been submitted to the jury, we vacate the judgment dismissing this count. We also hold that this appeal is not barred by either double jeopardy or collateral estoppel, and we remand the case for a new trial on count II.

I

The defendants are two moving and storage companies, Ashley Transfer & Storage Co. and Dale J. Cook Moving and Storage, Inc., and three individuals, Raymond C. Harshaw (vice president of Ashley Transfer), John D. Cook (president of Dale J. Cook Moving), and Thomas W. Bivens, Sr. (president of Bivens Moving and Storage). Thomas Bivens' company had operated a moving and storage company but by the time of trial, the corporation no longer existed. The defendants operated moving and storage companies in Charleston, South Carolina. They had at various times contracted with the United States military to provide moving and storage services for military personnel being transferred overseas.

Count I of the indictment alleged that the defendants had conspired to fix prices charged the United States for storage services at three military bases in South Carolina in violation of Section 1 of the Sherman Act.[1] Count II alleged that the defendants had conspired to defraud the Unit-

---

1. Section 1 of the Sherman Act, 15 U.S.C. § 1, provides in pertinent part:
   Every contract, combination in the form of a trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared illegal. Every person who shall make any contract or engage in any combination or conspiracy hereby declared to be illegal shall be deemed guilty of a felony.

ed States in violation of 18 U.S.C. § 371.[2]

Both counts relied on the same factual allegations concerning: (1) the time frame of the conspiracy; (2) the coconspirators; (3) the acts alleged; and (4) the methods by which the conspiracies were carried out. The government used substantially the same evidence at trial to prove both counts.

Before trial Bivens filed a motion, in which the other defendants later joined, requesting the court to require the government to elect between prosecuting count I or count II. The defendants argued that counts I and II were multiplicitous and that the government should not be allowed to prosecute both counts. The district court deferred ruling on the motion and the case proceeded to trial on both counts. At the end of the trial, the district court denied the defendants' motions for judgment of acquittal. The district court did not expressly rule on the defendants' motion to require the government to elect. Instead, after referring to the motion, it in effect made the election by declining to submit count II to the jury. The jury returned a verdict of not guilty as to all defendants on count I. The district court then entered judgments acquitting the defendants on count I and dismissing count II.

## II

The district court refused to submit count II to the jury because it decided that it would not sentence the defendants under both counts even if the jury found them guilty on both. The district court never expressly ruled on the multiplicity argument raised in the defendants' motion to elect, but it implicitly approved the motion because it said that the defendants "committed only one crime" and "should be tried for that one crime." The court also remarked that "the conspiracy to violate the antitrust law is totally subsumed by the conspiracy to defraud," and that the defendants should not be "double dipped."

■ There is no merit to the defendants' argument that counts I and II are multiplicitous. In *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932), the Supreme Court established a test of multiplicity. Where each offense requires proof of a fact not required by the other, a defendant can be punished under both statutes for a single act or transaction. *Accord Abernaz v. United States*, 450 U.S. 333, 338–39, 101 S.Ct. 1137, 1142, 67 L.Ed.2d 275 (1981) (Congress can impose multiple punishment for a single act that violates more than one statute); *United States v. Tedder*, 801 F.2d 1437, 1446–47 (4th Cir.1986) (no multiplicity even though same evidence used to prove each conspiracy because conduct in question violated different statutes defining separate offenses).

Under the *Blockburger* test, counts I and II charged separate offenses. The Sherman Act requires a showing of an effect on interstate or foreign commerce but not an effect on the government. Section 371 requires a showing of fraud on the government but not an effect on commerce. The two statutes serve separate and distinct purposes. The Sherman Act prohibits collusive activity in restraint of trade. Section 371 forbids the perpetration of fraud against the United States government.

In *United States v. Walker*, 653 F.2d 1343, 1351 (9th Cir.1981), the court held that under the *Blockburger* test, 18 U.S.C. § 371 and Section 1 of the Sherman Act are two separate offenses. We concur with the Ninth Circuit and hold that the defendants' multiplicity argument is meritless.

The defendants contend that the district court did not dismiss count II but rather made a factual determination that there was insufficient evidence to support sending both counts to the jury. The defendants argue further that the trial judge's

---

**2.** Title 18 U.S.C. § 371, entitled Conspiracy to Commit Offense or to Defraud United States, provides:

 If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years or both.

action constituted an acquittal on count II that is unappealable.

There is no support for this contention. The district judge explicitly called his ruling on count II a dismissal. Moreover, the trial judge stated that there was sufficient evidence of a conspiracy to fix prices. Although the court entered a judgment of acquittal on count I, it did not acquit the defendants on count II.

■ The district court had no discretion to refuse to submit count II. Rules 8(a) and 14 of the Federal Rules of Criminal Procedure provide for the joinder of multiple offenses arising from the same acts, unless joinder would be prejudicial to defendant. In *United States v. Maryland State Licensed Beverage Ass'n*, 240 F.2d 420, 422 (4th Cir.1957) we held that the government could not be forced to elect between two conspiracy counts, each alleging a violation of a different section of the Sherman Act, arising from the same conspiracy because there was no possible prejudice to the accused from trying the two counts together. Similarly, in this case the defendants would not have been prejudiced by having counts I and II tried together.

In our system, courts are not free to "interfere with the free exercise of the discretionary powers of the attorneys of the United States in their control over criminal prosecutions." *United States v. Cox*, 342 F.2d 167, 171 (5th Cir.1965); *see also In re Grand Jury*, 315 F.Supp. 662, 672–74 (D.Md.1970). Even in those instances where Congress intended only one conviction and one sentence for the violation of two statutes, the court should instruct the jury on both counts. If the jury returns guilty verdicts for each count, the court should enter judgment on only one of the statutory offenses. *Ball v. United States*, 470 U.S. 856, 865, 105 S.Ct. 1668, 1673, 84 L.Ed.2d 740 (1985). Based on this precedent, it is clear that when both counts can support separate convictions, both should be submitted to the jury. If, as here, the district judge believes only one sentence is appropriate, he can achieve that result by combining the counts for sentencing or imposing concurrent sentences. The Sentenc-

ing Guidelines provide the procedure for imposing punishment for crimes committed after the Guidelines' effective date when a defendant is convicted on multiple counts.

The district court's refusal to submit count II to the jury and the subsequent dismissal of the count was an unauthorized intrusion upon the prerogative of the government to seek an adjudication of guilt on each count.

### III

■ The government urges us to remand the case to the district court for a new trial of the defendants on count II. The defendants oppose this appeal generally, and remand specifically, on the grounds that retrial on count II is barred by the double jeopardy clause of the Constitution. The double jeopardy clause provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." The defendants argue that under the "same evidence test" employed in *United States v. Ragins*, 840 F.2d 1184 (4th Cir.1988), double jeopardy bars retrial on count II because essentially the same evidence which was used against the defendants in the trial on count I would suffice to convict on count II.

In *Ragins*, the government filed a new conspiracy indictment against a defendant who had been acquitted of conspiracy at an earlier trial. The defendant claimed that he was being reprosecuted for the same conspiracy. In determining whether the successive prosecutions involved the same offense, we employed the "same evidence test" which focused not on the formal elements of the two offenses but rather on the proof used to establish them. We stated that "the second prosecution is barred by double jeopardy if the evidence actually used to prosecute the first offense would suffice to convict of the second offense as charged." 840 F.2d at 1188.

The *Ragins* "same evidence test" is inapposite here because this case does not involve successive prosecutions. Rather, the government brought both charges in a single indictment against the defendants and

sought to try both charges together. The defendants' exposure to a second trial on count II is due only to their success in forestalling a proper adjudication of count II in the first trial.

The Supreme Court's decision in *United States v. Scott*, 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978), is controlling here. In *Scott*, the defendant was indicted for distribution of narcotics. He moved to dismiss two counts on the ground that his defense had been prejudiced by preindictment delay. At the close of the evidence, the court granted the defendant's motion and the government appealed. The defendant argued that the government's appeal was barred by the double jeopardy clause. 437 U.S. at 100, 98 S.Ct. at 2198.

The Supreme Court held that because the defendant deliberately sought termination of the proceedings against him "on a basis unrelated to factual guilt or innocence of the offense of which he is accused, [he] suffers no injury cognizable under the double jeopardy clause if the government is permitted to appeal from such a ruling of the trial court in favor of defendant." 437 U.S. at 98–99, 98 S.Ct. at 2198. The Court explained that the purpose of the double jeopardy clause is to guard against government oppression. When a defendant's choice and not government oppression causes successive prosecutions, "no interest protected by the double jeopardy clause is invaded when the government is allowed to appeal and seek reversal of such a midtrial termination of the proceedings in a manner favorable to the defendant." 437 U.S. at 100, 98 S.Ct. at 2198; *see also Jeffers v. United States*, 432 U.S. 137, 150–54, 97 S.Ct. 2207, 2215–18, 53 L.Ed.2d 168 (1977) (second trial permitted where defendant "was solely responsible for the successive prosecutions for conspiracy offense and the continuing enterprise offense").

Here the district court disposed of count II on a basis unrelated to the factual guilt or innocence of the defendants. Although the district court never expressly granted the defendant's motion to require election, it is clear from the record that the defend-ants' motion induced the court's refusal to submit count II to the jury as well as its ultimate dismissal of count II. Following the reasoning of *Scott*, we hold that the double jeopardy clause does not bar the government's appeal.

### IV

■ The defendants also argue that principles of collateral estoppel bar the government's appeal. Specifically the defendants contend that in finding them not guilty the jury determined that no conspiracy existed among them and that a new trial is precluded because the government is collaterally estopped from relitigating the conspiracy issue in a subsequent trial. The government responds that the jury could have based its verdict on other grounds and that they are therefore not collaterally estopped from relitigating the conspiracy issue.

In criminal cases, the government is collaterally estopped from retrying an issue of fact once it has been resolved in the defendant's favor by a valid and final judgment in a criminal proceeding. If the fact necessarily determined in the first trial is an essential element of the second offense, collateral estoppel may operate as a complete bar against the subsequent prosecution. *United States v. Ragins*, 840 F.2d 1184, 1193–94 (4th Cir.1988).

A defendant relying on collateral estoppel must show that the issue whose relitigation he seeks to foreclose was necessarily determined in the former trial. *United States v. Head*, 697 F.2d 1200, 1208 (4th Cir.1982). Where acquittal is by general verdict, however, it is often difficult to determine what issues were necessarily determined in the defendant's favor. In *Ashe v. Swenson*, 397 U.S. 436, 444, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970), the Supreme Court said:

The federal decisions have made clear that the rule of collateral estoppel in criminal cases is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality. Where a previous judgment of acquittal was based upon a general verdict as is usually the

case, this approach requires a court to 'examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.'

The Court urged lower courts to apply collateral estoppel with "realism and rationality rather than hypertechnicality" [because] "any test more technically restrictive would amount to a rejection of the rule of collateral estoppel in criminal proceedings." 397 U.S. at 444, 90 S.Ct. at 1194.

The Court gave an example of an overly mechanical application of the collateral estoppel test:

> If a later court is permitted to state that the jury may have disbelieved substantial and uncontradicted evidence of the prosecution on a point the defendant did not contest, the possible multiplicity of prosecutions is staggering. Such a restrictive definition of "determined" amounts simply to a rejection of collateral estoppel since it is impossible to imagine a statutory offense in which the government has to prove only one element or issue to sustain a conviction.

397 U.S. at 444 n. 9, 90 S.Ct. at 1194–95 n. 9 (quoting Mayers & Yarbrough, *Bis Vexori: New Trials and Successive Prosecutions,* 74 Harv.L.Rev. 1, 38–39 (1960)).

The issue contested by the parties here is whether the jury, in rendering its verdict of not guilty, necessarily determined whether a conspiracy existed among defendants. The government argues that since the Sherman Act requires a showing that defendant's activities impacted interstate or foreign commerce, the jury could have based its verdict on a finding that the government failed to prove that element. In so arguing, the government suggests that the jury may have disbelieved substan-

tial and uncontroverted evidence on a point the defendants did not contest.

The government presented substantial evidence at trial that the defendants' activities affected interstate or foreign commerce. Two government witnesses testified about the impact of the defendants' activities on interstate commerce. In addition, the defendants stipulated to the introduction of documentary evidence showing that the transactions between the government and the defendants implicated interstate commerce. Finally, the government argued the interstate commerce issue in its summation to the jury.

By contrast, the defendants did not introduce any evidence on the interstate commerce issue. Counsel for the defendants did not cross examine any of the government's witnesses on this issue nor did they address the issue during opening statement or closing argument. The defendants' sole defense was that no conspiracy existed among the defendants and coconspirators to fix prices.

Finally, in a conference with counsel about jury instructions, the district judge said there was no question that the defendants' activities impacted interstate commerce.[3]

Even though the government does not contest the fact that the defendants conceded the interstate commerce issue throughout the trial, the government argues that the jury was nevertheless "troubled by" the issue because it asked the judge to repeat the instruction on the issue. After some deliberation, the jury asked the judge to "go over the law of conspiracy and the law of trade and commerce." We cannot agree with the government that this broad request signified that the jury was "troubled" over the interstate commerce issue. The trial judge read the jury over 30 pages of instructions on numerous topics including the elements of a Section 1,

---

**3.** One commentator has observed that the interstate commerce issue is essentially a nonissue in most Sherman Act cases:

> Once one focuses on the inherent effects of a trade restraint in a national economy together with the long-held rule that the magnitude of

interstate effects is irrelevant, there are astonishingly few offenses to antitrust principles that do not 'affect commerce.'

Areeda & Hovenkamp, *Antitrust Law* § 231.1 (Supp.1987).

Sherman Act violation. Given the prolixity and complexity of the jury instructions, it is not remarkable that the jury asked the judge to repeat parts of the instructions.

In summary, the government presented substantial evidence on the interstate commerce issue which the defendants did not even attempt to controvert. Consistent with the Supreme Court's admonition in *Ashe*, 397 U.S. at 444, 90 S.Ct. at 1194, we cannot say that the jury could have based its acquittal on its disbelief of the government's evidence.

■ Since the jury could not rationally have based its acquittal on the interstate commerce issue, it must have acquitted the defendants on a finding that no conspiracy existed among the defendants. Ordinarily the government would therefore be collaterally estopped from retrying the conspiracy issue in a subsequent trial.

■ If the government is collaterally estopped from relitigating the conspiracy issue in a subsequent trial, collateral estoppel operates as a complete bar against a new trial because proof of the conspiracy is an essential element of count II. *See United States v. Ragins*, 840 F.2d at 1193–94. Where collateral estoppel operates as a complete bar against a subsequent prosecution, collateral estoppel is coextensive with double jeopardy. *Phillips v. United States*, 502 F.2d 227, 230 n. 14 (4th Cir. 1974).

Where collateral estoppel becomes coextensive with double jeopardy, the same considerations which governed the Supreme Court's decision in *United States v. Scott*, 437 U.S. at 98–100, 98 S.Ct. at 2197–99, control. Specifically, where the government has made no effort to prosecute the charges seriatim, the "considerations of double jeopardy protection implicit in the application of collateral estoppel are inapplicable." *Ohio v. Johnson*, 467 U.S. 493, 500 n. 9, 104 S.Ct. 2536, 2541 n. 9, 81 L.Ed.2d 425 (1983) (dictum).

Where, as in this case, the defendants' choice and not government oppression caused the successive prosecutions, the defendants may not assert collateral estoppel as a bar against the government any more than they may plead double jeopardy.

We vacate the district court's judgment dismissing count II and remand for a new trial.

VACATED AND REMANDED.