UNITED STATES of America,
Plaintiff–Appellee,

v.

Ruth MOLINA–IGUADO,
Defendant–Appellant.

No. 89–1375
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Feb. 15, 1990.

Michael Ferrill, Cox & Smith, San Antonio, Tex. (Court-appointed), for defendant-appellant.

Ruth Molina–Iguado, Sierra Blanca, Tex., pro se.

LeRoy Morgan Jahn, Ronald F. Ederer, Asst. U.S. Attys., San Antonio, Tex., Robert J. Erickson, Atty., Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before HIGGINBOTHAM, JONES, and SMITH, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Ruth Molina–Iguado appeals her conviction in a jury trial on two felony counts: (1) knowingly and intentionally importing a Schedule I controlled substance (marihuana) into the United States in violation of 21

U.S.C. §§ 952(a) and 960(a)(1), and (2) unlawfully, knowingly, and intentionally possessing with intent to distribute marihuana in violation of 21 U.S.C. § 841(a)(1). Molina–Iguado argues that the government violated her constitutional right to be free from vindictive prosecution by indicting her on two felony counts after she had entered into a plea agreement under which she would have pleaded guilty to only one misdemeanor count (violation of 21 U.S.C. § 844(a)). She also asserts that the evidence presented at trial was legally insufficient to support a conviction. We affirm.

## I.

### PROSECUTORIAL VINDICTIVENESS

#### Facts.

The day after Molina–Iguado's October 23, 1988, arrest, the government filed a complaint with the federal magistrate charging her with violations of 21 U.S.C. §§ 841(a)(1) and 952(a). On November 30, 1988, Molina–Iguado and the government entered into a duly signed and valid plea agreement, under which the government agreed to drop the felony charges in return for a plea of guilty to one misdemeanor count. The plea agreement made no mention of whether sentencing would be before a district judge or a magistrate.

At a hearing before the magistrate on December 9, 1988, Molina–Iguado, rather than pleading guilty, refused to consent to the jurisdiction of the magistrate and asserted her right under 18 U.S.C. § 3401(b) to proceed before a district judge. In her section 3401(b) motion, Molina–Iguado waived her rights to jury trial and to have at least thirty days to prepare for trial. Molina–Iguado does not contend, and the record does not show, that she made the magistrate or the prosecutor aware of whether she still intended to plead guilty to the misdemeanor count.

On December 21, 1988, the government indicted Molina–Iguado on the two felony counts on which she was ultimately convicted. On December 30, 1988, Molina–Iguado pleaded not guilty to these new charges. Trial was set for February 6, 1989. On February 3, 1989, Molina–Iguado appeared before the district court at a scheduling hearing and filed a motion to enforce the plea agreement. At the hearing, the court granted the government's motion to withdraw the plea agreement and denied defense counsel's request for a hearing on the matter, stating,

> No way. No way. I reject the plea agreement. You're not going to play this game. You can pass that on to all of your colleagues. If they make a deal with you, letting you plead to a misdemeanor instead of indicting you on a felony or making you go to trial on a felony, then you're going to do it in Magistrate's Court. I don't even have time for all the felony cases, much less misdemeanors. I'm not going to handle them.

Defendant's trial then proceeded as scheduled.

#### Discussion.

##### A.

■ In *United States v. Krezdorn*, 718 F.2d 1360, 1365 (5th Cir.1983) (en banc), *cert. denied*, 465 U.S. 1066, 104 S.Ct. 1416, 79 L.Ed.2d 742 (1984), we enunciated the following standard:

> If the defendant challenges as vindictive a prosecutorial decision to increase the number or severity of charges following a successful appeal, the court must examine the prosecutor's actions in the context of the entire proceedings. If any objective event or combination of events in those proceedings should indicate to a reasonable minded defendant that the prosecutor's decision to increase the severity of charges was motivated by some purpose other than a vindictive desire to deter or punish appeals, no presumption of vindictiveness is created. In trying the issue of vindictiveness, the prosecutor may offer proof of the sort suggested in [*Hardwick v. Doolittle*, 558 F.2d 292 (5th Cir.1977), *cert. denied*, 434 U.S. 1049, 98 S.Ct. 897, 54 L.Ed.2d 801 (1978)] that as a matter of fact his actions were not vindictive. The burden of proof (by a preponderance of the evidence) remains on the defendant who raised the affirma-

tive defense. If, on the other hand, the course of events provides no objective indication that would allay a reasonable apprehension by the defendant that the more serious charge was vindictive, i.e., inspired by a determination to 'punish a pesky defendant for exercising his legal rights,' a presumption of vindictiveness applies which cannot be overcome unless the government proves by a preponderance of the evidence that events occurring since the time of the original charge decision altered that initial exercise of the prosecutor's discretion.

While claiming that evidence of actual vindictiveness by the government exists on the record, Molina–Iguado has failed to present any such evidence.[1] Therefore, we look to "the prosecutor's actions in the context of the entire proceedings" to determine whether they give rise to a presumption of vindictiveness.

Our decision in *Krezdorn* followed that of the Supreme Court in *Bordenkircher v. Hayes,* 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978), where the Court had indicated caution in applying the presumption to alleged prosecutorial vindictiveness in the *pretrial* setting. In *Bordenkircher* a prosecutor, confronted with a defendant who refused to plead to the charges in an indictment, threatened to seek an indictment on more serious charges, then carried out the threat. The Court held that the prosecutor's actions did not constitute punishment for the exercise of a legal right but only part of the give-and-take of plea negotiations, in an effort to convince the defendant to forego his right to trial.

Similarly, in *United States v. Goodwin,* 457 U.S. 368, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982), the prosecutor had charged the defendant with a felony after he refused to plead guilty to a misdemeanor. The Court declined to apply the presumption:

> There is good reason to be cautious before adopting an inflexible presumption of prosecutorial vindictiveness in a pretrial setting. In the course of preparing a case for trial, the prosecutor may

uncover additional information that suggests a basis for further prosecution or he simply may come to realize that information possessed by the State has a broader significance. At this stage of the proceedings, the prosecutor's assessment of the proper extent of prosecution may not have crystallized. In contrast, once a trial begins—and certainly by the time a conviction has been obtained—it is much more likely that the State has discovered and assessed all of the information against an accused and has made a determination, on the basis of that information, of the extent to which he should be prosecuted. Thus, a change in the charging decision made after an initial trial is completed is much more likely to be improperly motivated than is a pretrial decision.

In addition, a defendant before trial is expected to invoke procedural rights that inevitably impose some 'burden' on the prosecutor. Defense counsel routinely file pretrial motions to suppress evidence; to challenge the sufficiency and form of an indictment; to plead an affirmative defense; to request psychiatric services; to obtain access to government files; to be tried by jury. It is unrealistic to assume that a prosecutor's probable response to such motions is to seek to penalize and to deter. The invocation of procedural rights is an integral part of the adversary process in which our criminal justice system operates.

Thus, the timing of the prosecutor's action in this case suggests that a presumption of vindictiveness is not warranted. A prosecutor should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution. An initial decision should not freeze future conduct. As we made clear in *Bordenkircher,* the initial charges filed by a prosecutor may not reflect the extent to which an individual is legitimately subject to prosecution.

---

**1.** Molina–Iguado has directed us only to statements made by the government in an unrelated case (The cases also had different prosecutors.). Such statements are irrelevant.

*Id.* at 381–82, 102 S.Ct. at 2492–93 (footnotes omitted).

Molina–Iguado's invocation of her section 3401(b) rights falls within the category of procedural rights that a defendant might be expected to invoke before trial and that inevitably impose some "burden" upon the prosecutor. *See Goodwin,* 457 U.S. at 381, 102 S.Ct. at 2492–93. "It is unrealistic to assume that a prosecutor's probable response to such motions is to seek to penalize and to deter." *Id.* Because the danger of prosecutorial vindictiveness "lay not in the possibility that a defendant might be deterred from the exercise of a legal right ... but rather in the danger that the State might be retaliating against the accused for lawfully attacking his conviction," *Bordenkircher,* 434 U.S. at 363, 98 S.Ct. at 667–68, and because we look for a "reasonable likelihood of vindictiveness," *Goodwin,* 457 U.S. at 373, 102 S.Ct. at 2488, an additional indictment in response to the exercise of the section 3401(b) right is particularly unlikely to reflect vindictiveness.

If the prosecutor believed that Molina–Iguado still intended to plead guilty to the misdemeanor, the prosecutorial resources implicated by Molina–Iguado's decision were minimal. The prosecutor would need only to appear at one additional hearing. Not only does "the institutional bias against the retrial of a decided question ... simply [have] no counterpart in this case," *Goodwin,* 457 U.S. at 383, 102 S.Ct. at 2494, but the additional resources concerned are far less than those required by a defendant's demand for jury trial, which the Court in *Goodwin* held provided an insufficient basis to presume that the subsequent additional indictment by the prosecutor was vindictive.

If, as is more likely, the prosecutor believed that Molina–Iguado no longer intended to plead guilty, then the government's actions certainly do not give rise to a presumption of vindictiveness. This outcome is mandated by *Bordenkircher.* As the Court explained in *Goodwin,*

> Thus, to preserve the plea negotiation process, with its correspondent advantages for both the defendant and the

State, the Court in *Bordenkircher* held that 'additional' charges *may* be used to induce a defendant to plead guilty. Once that conclusion was accepted, it necessarily followed that it did not matter whether the 'additional' charges were obtained in the original indictment or merely threatened in plea negotiations and obtained once those negotiations broke down. In the former situation, the prosecutor could be said simply to have 'anticipated' that the defendant might refuse to plead guilty and, as a result, to have placed his 'threat' in the original indictment.

457 U.S. at 378 n. 10, 102 S.Ct. at 2491 n. 10 (emphasis in original). Therefore, the prosecutor's actions, taken as a whole, do not create a presumption of vindictiveness.

We conclude that the instant case fits squarely within the parameters of *Bordenkircher* and *Goodwin.* Hence, the presumption of vindictiveness should not apply. The burden then falls on Molina–Iguado to establish vindictiveness, but she has offered no evidence to support a conclusion in her favor. Thus, we do not find prosecutorial vindictiveness.

### B.

■ Molina–Iguado contends that her due process rights were also violated by the district court in denying her motion to enforce the plea agreement. Many of the court's reasons for denying the motion, had they been expressed by the prosecutor rather than the court, might well have supported a finding of actual vindictiveness. However, we hold that the court's statements were irrelevant and of no detriment to Molina–Iguado, as the court had no authority to grant her motion, since there was no plea agreement which it could enforce.

As the Supreme Court has explained,

> A plea bargain standing alone is without constitutional significance; in itself it is a mere executory agreement which, until embodied in the judgment of a court, does not deprive an accused of liberty or any other constitutionally protected interest. It is the ensuing guilty plea that implicates the Constitution. Only after

respondent pleaded guilty was he convicted, and it is that conviction which gave rise to the deprivation of respondent's liberty at issue here.

*Mabry v. Johnson,* 467 U.S. 504, 507–08, 104 S.Ct. 2543, 2546–47, 81 L.Ed.2d 437 (1984) (footnotes omitted). Therefore, "Neither is the question whether the prosecutor was negligent or otherwise culpable in first making and then withdrawing his offer relevant. The Due Process Clause is not a code of ethics for prosecutors; its concern is with the manner in which persons are deprived of their liberty." *Id.* at 511, 104 S.Ct. at 2548 (footnote omitted).

We have similarly reasoned,

Thus, the realization of whatever expectations the prosecutor and defendant have as a result of their bargain depends entirely on the approval of the trial court. Surely neither party contemplates any benefit from the agreement unless and until the trial judge approves the bargain and accepts the guilty plea. Neither party is justified in relying substantially on the bargain until the trial court approves it. We are therefore reluctant to bind them to the agreement until that time. As a general rule, then, we think that either party should be entitled to modify its position and even withdraw its consent to the bargain until the plea is tendered and the bargain as it then exists is accepted by the court.

*United States v. Ocanas,* 628 F.2d 353, 358 (5th Cir.1980), *cert. denied,* 451 U.S. 984, 101 S.Ct. 2316, 68 L.Ed.2d 840 (1981).[2]

Thus, in the instant case, the prosecutor's bringing of the felony indictment, in direct contradiction to the terms of the plea agreement, was sufficient to constitute withdrawal from the plea agreement and to put defendant on notice of that withdrawal. Moreover, not only would any reliance by Molina–Iguado upon the unexecuted plea agreement be unjustified under *Ocanas,*

but also Molina–Iguado in fact has failed to demonstrate the existence of any detrimental reliance. She did not enter a guilty plea or otherwise prejudice her position by relying upon the government's offer during the period in which it was in existence (from November 30, 1988, to December 21, 1988). There is no "showing that the government gained some unfair advantage over [defendant] as a result of [her] reliance [that] might have justified a departure from the general rule [that either party can withdraw its consent to the plea bargain until a plea is tendered and the bargain is accepted by the court]." *Ocanas,* 628 F.2d at 358. Therefore, as the district court was without authority to enforce the plea bargain against the will of the government, any impropriety in the district court's justification for the refusal to do so cannot implicate Molina–Iguado's due process rights.

## II.

## SUFFICIENCY OF THE EVIDENCE

### Facts.

On October 23, 1988, Molina–Iguado crossed the border from Mexico into the United States. At the customs inspection checkpoint, the inspector noticed that she was very nervous, "wouldn't really hold any eye contact," and was driving a car in no condition to go to Albuquerque, her stated destination. Upon inspection of the car, the inspector discovered 9.072 kilograms of marihuana concealed inside a tire in the trunk.

Molina–Iguado admitted that she owned the car but claimed her boyfriend had borrowed it while she was in Mexico. However, she refused to identify this "boyfriend." Later a search of a totebag, the only clothing in which was women's and children's, uncovered additional marihuana wrapped inside a woman's undergarment.

---

**2.** The First Circuit also recently reached the same conclusion:

Thus, pursuant to general contract principles, *see* [Restatement (2d) of Contracts] *id.* §§ 35(2), 36(1)(c), 45(1), 50(1) & (2), we hold that a plea agreement of this type is no more than an offer by the government: if the defen-

dant pleads guilty and if that plea is accepted by the court, then the government will perform as stipulated in the agreement. Until performance took place by [defendant], the government was free to withdraw its offer. *United States v. Papaleo,* 853 F.2d 16, 20 (1st Cir.1988).

Commenting upon the two caches, the inspector, having examined the texture and color of each, said, "They were very similar. It was the same thing." Molina–Iguado failed to provide any explanation for the additional quantity of marihuana.

### Discussion.

The standard of review in challenges to the sufficiency of the evidence is whether, taken in the light most favorable to the government, any rational finder of fact could have found the essential elements of the offense charged beyond a reasonable doubt. *United States v. Price*, 869 F.2d 801, 804 (5th Cir.1989). In *United States v. Hernandez–Palacios*, 838 F.2d 1346, 1349 (5th Cir.1988), we explained,

> A possession conviction requires proof that a defendant had knowing possession of marijuana with the intent to distribute it. An importation conviction requires proof of similar elements, along with the additional proof that the defendant played a role in bringing the marijuana from a foreign country into the U.S. Possession may be actual or constructive, and may be proved by circumstantial evidence. One who owns or exercises control over a motor vehicle in which contraband is concealed may be deemed to possess the contraband. Intent to distribute may be inferred from the possession of a large quantity of contraband. [Footnotes omitted.]

Molina–Iguado asserts that the evidence (and, in particular, that of her nervousness) was insufficient to show that she knew of the marihuana hidden in the tire. However, we have previously held that nervousness and attempts by the defendant to convince agents that he knew nothing about his vehicle were sufficient to support a finding of knowing possession after contraband was found hidden in the vehicle. *See Price*, 869 F.2d at 804. Molina–Iguado's inability to verify in any way her story about her boyfriend, together with the discovery of an additional quantity of very similar marihuana found concealed inside women's clothing in a totebag in the car, is at least as indicative of knowing possession as were the defendant's statements in

*Price.* Therefore, we conclude that the government has met its burden.

AFFIRMED.