**UNITED STATES of America,**

v.

**Luis SANTIAGO–RODRIGUEZ, et al., Defendants.**

**No. 97–098 (HL).**

United States District Court, D. Puerto Rico.

Jan. 22, 1998.

Joseph C. Laws, Federal Public Defender, Hato Rey, PR, Esther Castro–Schmidt, San Juan, PR, for Defendants.

## OPINION AND ORDER

LAFFITTE, District Judge.

Before the Court is Defendant Luis Santiago–Rodríguez' request to recuse the Puerto Rico United States Attorney's Office and to compel the Government to specifically perform a proffer letter agreement entered into between the Government and Santiago–Rodríguez.[1] On January 13, 1998, the Court held an evidentiary hearing on this request. Santiago–Rodríguez and his attorney Esther Castro Schmidt ("Castro Schmidt") both testified. Santiago–Rodríguez also attempted to call Assistant United States Attorney ("AUSA") José Quiles as a witness, but the Government opposed and the Court denied the request. AUSA's Edwin Vázquez, Stephen Muldrow, and Desiree Laborde also testified. Based on the testimony and evidence presented at the hearing, the Court makes the following findings.

A five-count indictment returned on May 14, 1997[2], charged Santiago–Rodríguez and four other defendants with violations of 18 U.S.C. § 2 and of 21 U.S.C. §§ 841(a)(1), 846, 952(a), and 963. In June 1997, the Government and Santiago–Rodríguez entered into a proffer letter agreement ("the Agreement"). At the time, Edwin Vázquez was the AUSA assigned to the case. The Agreement reads in part as follows:

The purpose of the following is to particularize a preliminary agreement to be entered into between the United States Government and Luis Santiago–Rodríguez, in an effort to commence negotiations related to his possible cooperation. Neither the U.S. Government nor Luis Santiago–Rodríguez are bound by this writing to reach a cooperation agreement; rather, this preliminary agreement is intended to set the base from which negotiations will ensue.

Should Luis Santiago–Rodríguez enter into this preliminary agreement, arrangements will be made by the U.S. Department of Justice to have him fully debriefed in a secured setting offering guarantees of confidentiality. The specific time, place, and mode of transportation will be determined by the U.S. Bureau of Prisons and/or the U.S. Marshal Service, or the appropriate designated authority. His debriefing will include all his knowledge of his criminal activities and of his associates. The substance of his debriefing need not to [sic] be limited to his criminal activities, but Luis Santiago–Rodríguez is to reveal all his knowledge regarding criminal activity involving drug trafficking, illegal use or possession of firearms, murders, and any other criminal activity.

For the purpose of allowing the prosecution to assess the credibility and value of the evidence and possible testimony that he may provide, it will be agreed that Luis Santiago–Rodríguez will first reveal everything that he knows about these crimes, and that he will do so completely, truthful-

1. This controversy was spawned by a sealed motion filed by Santiago–Rodríguez on December 17, 1997, entitled "Motion for recusal, and for sanctions and/or any other remedy." Docket no. 63. At the evidentiary hearing held on this issue on January 13, 1998, counsel for attorney Esther Castro Schmidt clarified that the relief being sought was the recusal of the Puerto Rico United States Attorney's Office and specific performance of the proffer letter agreement.

2. Docket no. 7.

ly, and without guilt. It is also understood in this regard that Luis Santiago–Rodríguez is not entitled at this juncture to any specific consideration regarding the charges against him just because he will have given to the prosecution such a statement. Any such consideration, if any at all, will be unilaterally determined by the Department of Justice only after the statement is made.

Docket no. 63, exhibit 1.

Vázquez told Castro Schmidt that the debriefing called for in the Agreement would be postponed because the Government was preparing a superseding indictment in another criminal case in which Santiago–Rodríguez was to be added as a defendant.[3] If the debriefing had been done prior to the return of the superseding indictment, the Government would have been confronted with a *Kastigar v. U.S.,* 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 issue.[4] At the January 13, 1998, hearing Vázquez testified that there was a second reason why the Government was delaying its debriefing of Santiago–Rodríguez: the Government was in the process of interviewing another individual whose testimony would make any debriefing of Santiago–Rodríguez unnecessary.

Castro Schmidt alleged in her motion and at the hearing, however, that the Government had an ulterior motive for not debriefing Santiago–Rodríguez. She claimed that a series of incidents involving her and the U.S. Attorney's Office has created an atmosphere of animosity and that the U.S. Attorney's Office is conducting a "vendetta" against her. The result of this vendetta, she further alleged, is an infringement of her client's Sixth Amendment right to counsel of his choice.

The first incident between Castro Schmidt and the U.S. Attorney's Office arose in a case before Judge Casellas.[5] At a status conference held on August 13, 1997, she claimed that perjured testimony or unreliable evi-

dence might have been presented to the grand jury. At the conference she requested a copy of the grand jury transcripts. Judge Casellas granted her request. Castro Schmidt further claimed that at the conference, AUSA José Quiles became so upset at Castro Schmidt's suggestion regarding perjured testimony that the other attorneys present at the conference had to calm him down. Castro Schmidt subsequently withdrew from the case, and the individual she had been representing entered a guilty plea through new counsel. He is currently awaiting sentencing.

Second, Castro Schmidt claimed that shortly after the status conference, AUSA Quiles embarked on a "smear campaign" against her, made disparaging remarks about her to court personnel, and stated to other defense attorneys that he was going to get even with Castro Schmidt. At the Court's January 13, 1998, hearing, however, Castro Schmidt was unable to present any evidence to substantiate these claims regarding any comments made by Quiles.

The third incident involved a case before Chief Judge Cerezo.[6] In that case Castro Schmidt represented an individual who had previously been a defendant in a criminal case that Castro Schmidt had prosecuted when she was an AUSA in 1991. She first made an appearance in that case on August 13, 1997. On August 19, 1997, the Government informed her that she had to withdraw because of a conflict of interest. On August 20, 1997, she requested a hearing on this matter. She alleged that the Government threatened her with prosecution under 18 U.S.C. § 207 if she did not withdraw from the case. The case was referred to Magistrate Judge Arenas for a hearing. On August 27, 1997, he issued a report and recommendation that Castro Schmidt be allowed to remain in the case unless her client decided

---

**3.** Crim. no. 97–011(PG).

**4.** If the debriefing had been held prior to the return of the superseding indictment, pursuant to *Kastigar v. United States,* 406 U.S. 441, 460, 92 S.Ct. 1653, 1665, 32 L.Ed.2d 212 (1972), the Government would have to prove it did not derive evidence from Santiago–Rodríguez' immunized statements made during the debriefing. *See*

*United States v. Serrano,* 870 F.2d 1, 14–15 (1st Cir.1989); *see also United States v. Poindexter,* 951 F.2d 369, 373 (D.C.Cir.1991).

**5.** Crim. no. 97–067(SEC).

**6.** Crim. no. 97–139(CCC).

that she should withdraw. In a separate order dated November 12, 1997, Chief Judge Cerezo adopted the report and recommendation and found the conduct of the U.S. Attorney's Office in the matter to be "troubling."

The fourth incident arose in a case before Judge Pérez–Gimenez in which Santiago–Rodríguez was added as a defendant in a superseding indictment returned on November 12, 1997.[7] On November 21, 1997, Castro Schmidt made an appearance on behalf of Santiago–Rodríguez. At the time she was also representing another defendant in that case. The Government filed a motion on November 28, 1997, raising the issue of a possible conflict of interest in Castro Schmidt's representation of two defendants in the same case. A *Foster* hearing was held before Judge Pérez–Gimenez on the subject, and a waiver of conflict was accepted. At the Court's January 13, 1998 evidentiary hearing, Castro Schmidt acknowledged that a *Foster* hearing must be held when one attorney represents two defendants in the same case. *See United States v. Foster*, 469 F.2d 1 (1st Cir.1972). She also acknowledged that it was proper for the Government to raise this issue.

Castro Schmidt alleges that these incidents are indicative of a campaign being mounted against her by the U.S. Attorney's Office. She further alleges that in the present case, the Government has, as part of its campaign against her, refused to return her telephone calls and now refuses to debrief Santiago–Rodríguez as provided for in the Agreement. In a letter dated November 21, 1997, the Government returned Santiago–Rodríguez' proffer agreement and informed her that it was no longer interested in debriefing her client. She claims that Government' Sixth Amendment right to the counsel of his choice is being threatened as a result of this vendetta. On December 17, 1997, Castro Schmidt first raised this issue in a sealed motion. She requested that a hearing be held on the matter as soon as possible. Following a pretrial conference held for this case on December 22, 1997, the Court met with Castro

Schmidt and the Government attorneys to address this controversy.[8] At the meeting, the Court ordered the parties to meet on December 29, 1997, to try to resolve their differences.

The two sides met on December 30, 1997. No debriefing took place, but the parties did discuss the possibility of a change of plea. Castro Schmidt testified that in the meeting, the Government agreed to adjustments that would result in a sentence of approximately 22 years if Santiago–Rodríguez were to change his plea. At the hearing held on January 13, 1998. Castro Schmidt acknowledged that if Santiago–Rodríguez went to trial he could receive a life sentence. At the December 30 meeting, however, the parties were unable to reach an agreement. On January 7, 1998, Castro Schmidt filed another sealed motion in which she again requested a hearing on this matter as soon as possible.[9] In an order dated January 8, 1998, the Court scheduled a hearing for January 13, 1998.[10]

## DISCUSSION

 Santiago–Rodríguez seeks to enforce the Agreement. Contract law principles serve as a useful reference for construing pre-trial agreements between the Government and a criminal defendant. *See United States v. Cobblah*, 118 F.3d 549, 551 (7th Cir.1997) (proffer agreement); *United States v. Santiago–Gonzalez*, 66 F.3d 3, 6 (1st Cir.1995) (plea agreement); *United States v. McLaughlin*, 957 F.2d 12, 16 (1st Cir.1992) (immunity agreement); *United States v. Khan*, 920 F.2d 1100, 1105 (2nd Cir.1990) (cooperation-for-immunity agreement). In the case of a plea agreement, neither party is bound by its terms until the entry of a guilty plea. *United States v. Savage*, 978 F.2d 1136, 1138 (9th Cir.1992); *United States v. Molina–Iguado*, 894 F.2d 1452, 1455–56 (5th Cir.1990); *United States v. Papaleo*, 853 F.2d 16, 19–20 (1st Cir. 1988). However, some detrimental reliance by the defendant on the agreement could

7. Crim. no. 97–011(PG).

8. Docket no. 70.

9. Docket no. 78.

10. Docket no. 79.

make it binding on the government. *Savage*, 978 F.2d at 1138; *Molina–Iguado*, 894 F.2d at 1456; *Papaleo*, 853 F.2d at 18–19 (No due process concerns when defendant has not detrimentally relied on a government's offer).

■ Santiago–Rodríguez requests specific performance of the Agreement. Specific performance is an equitable remedy that is not a matter of absolute right. *Texas v. New Mexico*, 482 U.S. 124, 131, 107 S.Ct. 2279, 2285, 96 L.Ed.2d 105 (1987) (quoting *Haffner v. Dobrinski*, 215 U.S. 446, 450, 30 S.Ct. 172, 173, 54 L.Ed. 277 (1910)). It is a remedy which rests in the court's discretion, to be exercised with regard to principles of equity and to the facts of each case. *Id.; United States v. Alexander*, 736 F.Supp. 1236, 1242 (N.D.N.Y.1989), *aff'd* 901 F.2d 272 (2nd Cir. 1990). A court deciding whether to grant specific performance should consider possible prejudice to the defendant, the government's conduct, and the public interest. *Margalli–Olvera v. Immigration and Naturalization Service*, 43 F.3d 345, 355 (8th Cir.1994). If any prejudice has been cured, specific performance is not necessary. *United States v. Benson*, 836 F.2d 1133, 1136 (8th Cir.1988).

The First Circuit's decision in *Papaleo* is instructive. In that case, a plea agreement provided that in exchange for the defendant's guilty plea as to the first count, the government would move to dismiss the other two counts of the indictment. 853 F.2d at 19. The government subsequently attempted to withdraw the agreement. The First Circuit held that because the agreement lacked explicit promissory language and because the agreement was not enforceable against the defendant, the ambiguously worded agreement was therefore also not enforceable against the government. *Id.* at 19–20. Additionally, the First Circuit found persuasive the fact that defendant had not detrimentally

relied on the government's promise to dismiss two counts. Because the defendant did not actually enter a guilty plea and did not forgo a jury trial, he was no worse off than if the agreement had never been made. *Id.* at 18–19. Therefore, the government was allowed to withdraw the offer.

■ The Court finds that the facts of the present case compel a similar result. The Agreement between the Government and Santiago–Rodríguez states that it does not bind either party to reach a cooperation agreement. Instead, the Agreement is intended to lay a groundwork for the parties to begin negotiating. In other words, the Agreement is an agreement to discuss the possibility of Santiago–Rodríguez' cooperating. The Government agrees only to make arrangements to debrief Santiago–Rodríguez should he agree to do so. Santiago–Rodríguez is not compelled to undergo a debriefing. No debriefing has taken place. Thus, Santiago–Rodríguez has not detrimentally relied on the Agreement.[11] He is in no worse position now than if the parties had never entered into the Agreement.

This case is unique in that Santiago–Rodríguez now insists that he be debriefed, while the Government does not wish to debrief him. Because the Agreement was an agreement only to begin cooperation negotiations and because the Government is no longer interested in his cooperation, the Court will not compel a debriefing. To the extent that Santiago–Rodríguez is seeking to be protected by immunity as a result of a debriefing, the Agreement specifically states that the Government is not bound to reach a cooperation agreement with Santiago–Rodríguez. Thus, the Court may not force the parties to reach such an agreement. Santiago–Rodríguez claims that he has valuable information regarding a number of other crimes and that the Government should be forced to listen to

11. Evidence was presented at the hearing that Santiago–Rodríguez provided AUSA Muldrow with a document listing crimes of which Santiago–Rodríguez had knowledge and which were unrelated to the charges currently pending against him. However, AUSA Muldrow testified, quite credibly, that he sealed the document without ever looking at it. He sealed the document for the same reason that AUSA did not

debrief Santiago–Rodríguez: to avoid a *Kastigar* issue. This document was returned to Castro Schmidt along with the Agreement in November 1997 when the Government informed Santiago–Rodríguez that it was no longer interested in his cooperation. Because the Government did not examine this document, it cannot constitute detrimental reliance on the part of Santiago–Rodríguez.

him. The Government, for its part, chooses not to listen to his information.

▆▆▆ The Government is in the best position to evaluate a defendant's possible cooperation. *See Wade v. United States,* 504 U.S. 181, 187, 112 S.Ct. 1840, 1844, 118 L.Ed.2d 524 (1992). Generally, prosecutorial discretion should not be subject to judicial review. *Wayte v. United States,* 470 U.S. 598, 607–08, 105 S.Ct. 1524, 1530–31, 84 L.Ed.2d 547 (1985); *United States v. Forney,* 9 F.3d 1492, 1501–02 n. 4 (11th Cir.1993). Incident to the constitutional separation of powers, courts should be reluctant to interfere in the discretionary functions of the United States Attorney's Office. *United States v. Ramos,* 933 F.2d 968, 971 n. 1 (11th Cir.1991); *United States v. Ashley Transfer & Storage Co.,* 858 F.2d 221, 224 (4th Cir.1988); *In re Grand Jury Proceedings,* 700 F.Supp. 626, 629 (D.P.R.1988). Prosecutorial discretion, although broad, is not unlimited; a federal court may intervene if there is a risk that statutory or constitutional rights may be infringed. *United States v. Drown,* 942 F.2d 55, 60 (1st Cir.1991).

In the present case, the Government claims that it is no longer interested in any cooperation that Santiago–Rodríguez may have to offer because another individual has provided them with the evidence it seeks. In support of this claim, the Government has submitted a sealed motion which contains a copy of the interview with this individual.[12] The Court has reviewed the sealed motion and is satisfied with the Government's explanation as to why it no longer wants to debrief Santiago–Rodríguez. At the hearing, Santiago–Rodríguez and his counsel claimed that he had access to information on additional crimes, but that the Government is not interested in this information. The evaluation of Santiago–Rodríguez as a cooperating witness in other crimes is one best left to the Government. Any determination by the Court as to the viability of using Santiago–Rodríguez as a witness would constitute undue overreaching by the Court into the purview of the executive branch.

▆▆▆ Santiago–Rodríguez claims that the Government's refusal to debrief him or to otherwise consider him as a potential cooperating witness is part of its campaign against attorney Castro Schmidt. In general, a defendant may prove a claim of government vindictiveness in one of two ways: evidence of a prosecutor's retaliatory motive may prove actual vindictiveness, or there may be facts which give rise to a presumption of vindictiveness. *United States v. Paramo,* 998 F.2d 1212, 1220 (3rd Cir.1993). Even where a defendant has established a realistic likelihood of government vindictiveness, the government will still have the opportunity to offer legitimate reasons for its conduct. *Id.* If the government is able to provide legitimate reasons for its conduct, there is no presumption of vindictiveness. *Id.* In the present case, to demonstrate vindictiveness Santiago–Rodríguez points to the series of incidents that have occurred recently in other criminal cases in which Castro Schmidt has appeared; the alleged "smear campaign" and disparaging remarks by AUSA Quiles against her; the Government's refusal to return her calls; and its refusal to debrief Santiago–Rodríguez or consider him as a potential cooperating witness.

▆▆▆ The Court finds that these incidents and allegations are insufficient to demonstrate vindictiveness. With regard to the incidents which arose in the other cases, Judges Cerezo, Pérez–Gimenez, and Casellas have all made rulings on those discrete controversies. The Court need not-and may not-revisit their rulings. As to the refusal to interview Santiago–Rodríguez, the Court has found that the Government has proffered a legitimate reason for its not doing so. With regard to the alleged smear campaign and disparaging remarks by AUSA Quiles, Castro Schmidt did not present evidence at the hearing to support this allegation. The Court is aware that the Government objected to her request to call AUSA Quiles as a witness, thereby depriving her of the opportunity to present the testimony of the person allegedly responsible for the smear campaign.[13] Even assuming that her allegations

---

12. Docket no. 75.

13. A party wishing to call an AUSA as a witness must submit to the AUSA in charge of the case

are true, however, the Court finds that at most they indicate unprofessional comments by an attorney who was unduly upset with attorney Castro Schmidt. Although improper, such comments would not provide sufficient support to establish prosecutorial vindictiveness. Similarly, any failure by the U.S. Attorney's Office to return Castro Schmidt's calls, although evidencing a lack of professional courtesy, are not sufficient to demonstrate that there is a campaign or "vendetta" against her.

The claim of vindictiveness is further weakened by the nature of the Court-ordered meeting between the parties on December 30, 1997. As Castro Schmidt testified at the hearing, the Government was amenable to adjustments that would result in a sentence of approximately 22 years in exchange for a guilty plea from Santiago–Rodríguez. At the hearing Castro Schmidt further acknowledged that if Santiago–Rodríguez went to trial he could conceivably receive a life sentence. The offer of a 22–year sentence is not unreasonable given the maximum sentence to which Santiago–Rodríguez would be exposed at trial. Such an offer is also not indicative of a vendetta directed against Castro Schmidt or her clients.

 The basis for disqualifying an AUSA must be "very strong." *United States v. Heldt,* 668 F.2d 1238, 1276–77 n. 80 (D.C.Cir.1981). The disqualification of the government's counsel is a drastic measure and the court should hesitate to do so unless it is absolutely necessary. *Matter of Grand Jury Subpoena of Rochon,* 873 F.2d 170, 176 (7th Cir.1989); *Gray v. Rhode Island Dep't of Children, Youth and Families,* 937 F.Supp. 153, 159 (D.R.I.1996). Furthermore, a court will not oversee a prosecutor's discretion unless his conduct is based on an " 'unjustifiable standard such as race, religion, or other arbitrary classification.' " *Bordenkircher v. Hayes,* 434 U.S. 357, 364, 98 S.Ct. 663, 668–69, 54 L.Ed.2d 604 (1978) (quoting

*Oyler v. Boles,* 368 U.S. 448, 456, 82 S.Ct. 501, 506, 7 L.Ed.2d 446 (1962)); *United States v. Doe,* 934 F.2d 353, 361 (D.C.Cir. 1991). The record in the present controversy does not indicate that the Government has based its decisions on unjustifiable standards. Rather, it appears more likely that the dispute between the parties has been caused by a clash of personalities. This state of affairs, although unfortunate, does not justify the wholesale disqualification of the U.S. Attorney's Office. Accordingly, the Court must deny Santiago–Rodríguez' drastic request to do so.

Our legal system is adversarial in nature. Because conflict is an integral part of the system, it is not surprising that from time to time professional disputes degenerate into personal animosity. The Court acknowledges that such situations exist, but it does not condone them. In the present case, unfortunately, it appears that an acrimonious atmosphere has developed between Castro Schmidt and AUSA Quiles. Nonetheless, as discussed above, disqualification is not justified in this case. The Court does expect, however, that in the future both sides will attempt to work together in a professional manner and will focus their energies on the merits of the case and not on invectives and accusations of a personal nature. To the contrary, the Court will be forced to consider the imposition of sanctions on any attorney who allows personal animosity to interfere with the proper and prompt resolution of this case.

WHEREFORE, Santiago–Rodríguez' requests for specific performance of the Agreement and for the disqualification of the Puerto Rico United States Attorney's Office are hereby denied.

**IT IS SO ORDERED.**

---

an affidavit or a statement setting forth a summary of the testimony sought. 28 C.F.R. § 16.23(c) (1997); *United States v. Marino,* 658 F.2d 1120, 1125 (6th Cir.1981); *People of State of Cal. v. Reyes,* 816 F.Supp. 619, 622 (E.D.Cal. 1992). Castro Schmidt failed to comply with these procedures, and the Court accordingly denied her request to call Quiles as a witness.

Castro Schmidt now moves for a continuance to enable her to comply with the requirements of § 16.23(c) and attempt again to call him as a witness. Docket no. 86. Because the Court makes its ruling today assuming that her allegations are true, the motion for a continuance is denied as moot.